(No. 53051.—

BERTHA REIDELBERGER, Indiv. and as the Adm'x, Appellant, v. HIGHLAND BODY SHOP, INC., Appellee.

*Opinion filed January 20, 1981.*

SIMON, J., took no part.

John Dale Stobbs, of Stobbs & Sinclair, of Alton, for appellant.

James E. Gorman, of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This appeal concerns the propriety of the action of the circuit court of Madison County in granting plaintiff's (Bertha Reidelberger) motion for a new trial. The jury, in this products liability case, returned a verdict in favor of the defendant, Highland Body Shop, Inc. The judge granted the plaintiff's motion for a new trial. The appellate court, with one judge dissenting, reversed the circuit court. (79 Ill. App. 3d 1138.) We granted leave to appeal under our Rule 315. 73 Ill. 2d R. 315.

The plaintiff's 17-year-old son, Terry Reidelberger, was killed in a single-car accident when the automobile he was driving went out of control after passing another vehicle. The complaint sought damages from the defendant body shop, where repairs to the car had been performed some three months before this accident. Approximately one month before trial, plaintiff submitted a motion *in limine* to Judge Moses Harrison. The relevant portions of the motion sought to prohibit questions concerning, and discussion of:

"(b) The purported speeds of the decedent's vehicle and the vehicle passed by the decedent some two miles from the scene of the accident ***.

(c) The purported movements of the decedent's vehicle in the Grant Fork Turns some five miles from the scene of the accident.

(d) The purported statement of Ellen Niggli, a non-party witness, made two days after the accident to Trooper Loyet ***.

The judge granted these portions of the motion, directing the defendant not to refer directly or indirectly by opening statement, question or otherwise to these items without first taking the matter up with the court.

Although the *in limine* order was entered by Judge Harrison, the trial was presided over by Judge Victor Mosele. The trial was marked by a great deal of bickering between counsel. The jury found for the defendant. The plaintiff filed a motion for a new trial, which was granted by Judge Mosele. The basis for the new trial was alleged violations of the *in limine* order. The judge, in granting the motion for a new trial, stated:

> "This order was directly violated by the defendant in his opening statement when he referred to the plaintiff's leapfrogging movements not at the scene of the accident. In chambers, it was once again made clear to the defendant that speeds and movements of the car not at the scene of the accident were inadmissible. Subsequent to the conference in chambers the order was violated by the defendant with respect to witness Loyet, witness Niggli, witness Strohbeck, witness Stumpf, and witness Saathoff. Due to the repeated violations of the motion in limine and the court's direction in chambers, the prejudicial impact upon the jury was such that it was impossible for the plaintiff to receive a fair trial."

The appellate court reversed Judge Mosele's order, finding that Judge Mosele abused his discretion. We now affirm the decision of the appellate court.

Great deference is generally given to decisions of trial judges in granting or denying motions for new trial. (See *Workman v. Goldford* (1967), 86 Ill. App. 2d 403; *Warren v. Patton* (1954), 2 Ill. App. 2d 173; see generally 2 Ill. L. & Prac. sec. 792, at 769 (1953).) A court on review will not reverse the trial court's decision to grant a new trial merely because it would have come to a different conclusion on the facts. (See *Swift & Co. v. Madden* (1896), 63 Ill. App. 341; see generally 5A C.J.S. *Appeal and Error* sec. 1583, at 35 (1958).) The decision of a trial court to grant a new trial is an exercise of discretion which should not be disturbed unless a clear abuse of that discretion is shown. (See *Ervin v. Sears, Roebuck & Co.* (1976), 65 Ill. 2d 140; *Department of Public Works & Buildings v.*

*Russell* (1963), 28 Ill. 2d 491; *Department of Public Works & Buildings v. Roehrig* (1976), 45 Ill. App. 3d 189; see generally 5 Am. Jur. 2d *Appeal and Error* sec. 772, at 215 (1962).) In determining whether that discretion was abused, the reviewing court will consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. See *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890.

It is plaintiff's theory that the accident was caused by a bent or defective rear axle which had been installed by the defendant in the automobile which her son was driving. The defendant contends that the bent axle was the result of the accident, which the defendant contends was caused by the manner in which the decedent drove the automobile. The jury returned a verdict for the defendant. It is not contended, and the trial court did not find, that the verdict was against the manifest weight of the evidence. There is sufficient evidence in the record from which the jury could find that the bent axle was caused by the accident instead of being a cause of the accident, and from which the jury could find that the accident was caused by the driving of the decedent. We must therefore consider, in our determination of whether the trial court abused its discretion in allowing the plaintiff's motion for a new trial, whether the plaintiff was denied a fair trial.

The trial court granted the new trial because of the conduct of the defendant's counsel, which it felt constituted violations of the *in limine* order. An *in limine* motion permits a party to obtain an order before trial excluding inadmissible evidence and prohibiting interrogation concerning such evidence without the necessity of having the questions asked and objections thereto made in front of the jury. Thus, the moving party will be protected from whatever prejudicial impact the mere asking of the questions and the making of the objections may have upon a jury. (See *Department of Public Works & Buildings v.*

*Sun Oil Co.* (1978), 66 Ill. App. 3d 64.) The ability to restrict interrogation makes the *in limine* order a powerful weapon. This power, however, also makes it a potentially dangerous one. Before granting a motion *in limine,* courts must be certain that such action will not unduly restrict the opposing party's presentation of its case. Because of this danger, it is imperative that the *in limine* order be clear and that all parties concerned have an accurate understanding of its limitations. This court must therefore determine whether the order in this case was in fact clear and whether the reasons stated by the circuit court for granting a new trial are indeed supported by the record. If they are not, the circuit court will have abused its discretion.

As noted above, the trial judge, in granting a new trial, specified the violations of the *in limine* order which he thought required such action. The first alleged violation occurred during opening statement by defendant's attorney, who stated:

> "The evidence will show there were two cars there at the scene of the accident. These two cars had been, for want of a better term, leapfrogging down the highway. They left the Grant Fork area, and there were four or five young men in the second car; two young girls and Terry Reidelberger in the other car. If I can recall the sequence— but first there is another witness named Dean Saathoff, and his wife, who was riding with him, but at one point, if I can remember the sequence, but the boys said they came up on the Reidelberger car. They tried to pass it about—"

At this point, plaintiff's counsel objected, essentially claiming that the term "leapfrogging" violated the *in limine* order. Since there had been no changes in the *in limine* order at that point, the restrictions contained in Judge Harrison's original order were still applicable. Leapfrogging, in that it refers to vehicle movement, falls within the second *in limine* restriction contained in the plaintiff's *in limine* motion set out above. If the term referred

to movements within five miles of the site of the accident, it was proper under the original order. Grant Fork, as set out in the motion *in limine*, appears to be located at the five-mile distance limit. The attorney's statement appears to refer to leapfrogging after the car left Grant Fork. If so, the purported movements were clearly within the five-mile limit. This was in fact the case when later it was established that the purported leapfrogging referred to movements one or two miles from the scene.

Even if the statement would have referred to movements at a questionable distance, previous comments made by the court just prior to opening statements would have led the attorney for the defendant to assume that his intended statement would be acceptable. In denying a motion of the plaintiff, the court stated:

> "Each side is entitled to present his own theory of the case; that as I understand it, Mr. Gorman's [defense counsel] theory is the bent axle was caused by the impact, and one of the related factors was the speed, whatever it is, was of such force that would cause an axle to be bent in that fashion. I think that's admissible. I am going to allow him to make an opening statement the way he wants it."

In light of the order's restrictions and the court's comment, the defendant could hardly be accused of violating the *in limine* order in this regard.

The circuit court further charged in the order granting the new trial that the court's expectations regarding the order were made abundantly clear to the defendant in a conference held shortly after the "leapfrogging" comment. This statement is not supported by the record, however. During the conference, and later, the court made several statements adopting differing restrictions as to movement and speed. These statements are not only inconsistent with the original order, but also with each other. For instance, during a conference shortly after the leapfrogging statement, the court stated:

> "The only thing I am saying, in reference to the

> actions of the car a mile or two down the road is not admissible."

Apparently the court wished to alter the restriction in the original order dealing with movement. It wished to reduce the discussion of movement from actions five miles away to some lesser distance. Some time later the court stated:

> "I don't think I'm going to— You may be mistaken as to what my limitations are. I think you can have testimony regarding the movement of the car prior to this accident in that it was normal, abnormal or whatever. What I am limiting you to is the speed of the automobile a mile or two down the road. I think when you get in the immediate vicinity of the accident, half a mile, I think the testimony of the speed is good. But as to the movement of the car and the actions of the car a mile or two or three or four miles down the road, I think it's alright."

Here again the court appears to be altering the restrictions set out in the original order. The discussion of speed not at the scene was reduced from two miles to one-half mile. The discussion of movement was changed from the limitation set out in the previous statement. Later the court stated, "Now if this man's driving was the proximate cause of this accident, he is entitled to show the driving of your man [decedent]. Now the question is how far back you go." Finally, the court ruled that the defendant could not show driver-induced movements of the car except immediately prior to the accident. Certainly the rulings of the court during trial were not consistent with the limitations contained in the original pretrial *in limine* order.

Also, the rulings of the court during trial were not sufficiently specific or clear. For instance, it is not clear, when the court stated that "movements of the car and the actions of the car a mile or two or three or four miles down the road, I think it is all right," whether the court was referring only to movements of the car caused by a defect in the vehicle, or whether the court was referring

to driver-induced movements. Granting a new trial because of conduct of counsel which did not violate the original *in limine* order and because of what the court in retrospect perceived to be violations of rulings made during the trial, which the record reveals were neither clear nor consistent, constitutes a clear abuse of discretion.

The defense counsel had a right to present evidence to support his theory of the case. Thus, evidence of speed and driver-induced movements of the vehicle were relevant, not as evidence of contributory negligence, but as evidence of the cause of the accident. The limitations of the original *in limine* order were sufficiently broad to permit the defendant to prove its theory of the case, yet they prohibited the defendant from introducing evidence of speed and movements of the vehicle so distant from the scene of the accident that such evidence would be irrelevant. The plaintiff, of course, was anxious to eliminate as much of the evidence of speed and erratic movements of the vehicle as possible and argued during trial that such evidence only tended to prove contributory negligence, which is not relevant in a products liability case.

There was a needless amount of bickering and argument among counsel and by counsel with the court during the trial. Such conduct only serves to create confusion and can easily lead a judge to inadvertently vary his position or change his rulings. At the time the trial judge granted the new trial, the transcript of the testimony had not been prepared. The trial judge did not therefore have an opportunity to review the record to ascertain whether the *in limine* order or his rulings had in fact been violated or whether his rulings had been consistent.

This court's reading of the record, however, finds that the trial court's rulings were not particularly clear. The statements by the court at trial set progressively more restrictive limitations on the discussion of speed and movement than those contained in Judge Harrison's original

*in limine* order. The most restrictive statement was set out in the new trial order. As shown above, it considered all discussion of speed and movement not at the scene of the accident to be violations of the *in limine* order. Neither the pretrial *in limine* order nor any ruling of the court during trial held that all evidence of speed and movements of the vehicle not at the scene of the accident was inadmissible. While we are sure the trial court was not aware of the breadth of these inconsistencies when granting the new trial order, they were in fact confusing. The granting of a new trial for these alleged violations is an abuse of discretion.

The circuit court listed a further ground for its new trial order. The attorney for the defendant allegedly violated the *in limine* order during his questioning of witnesses Loyet, Niggli, Strohbeck, Stumpf and Saathoff. Unfortunately, the trial court did not specify the instances where these transgressions occurred. Here again the trial judge, when he granted the new trial, did not have the benefit of the transcript, and his ruling had to be based on his recollection of the events at trial, which contained many assertions by counsel not supported by testimony. After having examined the entire record, we find very little interrogation by defense counsel and very few statements by witnesses which border on a violation of either the original order or of the court's subsequent rulings. These few instances do not constitute such conduct as could be said to deny the plaintiff a fair trial.

The *in limine* order prohibits interrogation or testimony relating to the hospital conversation between Officer Loyet and Ellen Niggli. The only questioning by the defense counsel of Officer Loyet on this matter is as follows:

> "Q. And following your investigation, did you speak to a young lady that was in one of the cars, Ellen Niggli, at the hospital following the accident?
>
> MR. STOBBS [plaintiff's counsel]: Your Honor,

we're going to object to that. It is not relevant or material, and the Court has previously so ruled.

    THE COURT: The question is, did you speak; I mean, that by itself is alright.''

The court recognized that merely asking the officer if he spoke to Miss Niggli at the hospital was alright. Any prejudice to plaintiff could only exist in the substance of the conversation. No prejudice arose by merely mentioning that a conversation took place. There was nothing in the question or the answer sought that implied that the contents of the discussion were injurious to the plaintiff's position. We cannot view this as a violation of the *in limine* order.

We also find no violation of the order in the two instances in questioning witness Niggli which refer to *in limine* order matter. Those passages are as follows:

    "MR. GORMAN [defense counsel]: Ellen, did the State Trooper come to the hospital and talk to you about the accident?

    A. No.''

As stated above, the mere asking if the officer talked to her does not violate the order. This witness was further questioned as follows:

    "Q. Now regarding the speed, let me just ask you this question; when this happened, was Terry Reidelberger going pretty fast?

    MR. STOBBS: You mean when the car left the roadway or as he was passing?

    MR. GORMAN: The witness doesn't need these—

    MR. STOBBS: We are going to object unless he fixes a time and place.

    THE COURT: Can you specify?

    MR. GORMAN: As the accident— just before the car goes out of control.

    A. I don't remember.''

The reference to speed here was within the permissible distance limitation of both the *in limine* order and the subsequent court rulings.

During the cross-examination of witness Strohbeck, one of the passengers in the vehicle passed by the Reidelberger car just prior to the accident, the following exchange occurred:

"Q. Mr. Stobbs asked if there were any cars in the area before and you said that there were none coming. Where was this first car that came up, that you noticed coming from the scene, from what direction?

A. We passed them back more near Grant Fork Corners. We knew they were back there.

Q. And that was about how far from the place of the accident?

A. When we passed the cars?

Q. Yes.

A.. I don't know, three or four miles back from where the accident happened, where the Grant Fork Corners are.

MR. STOBBS: The court has previously ruled that anything that transpired— We are talking about something else, but I think the point is it is not really relevant.

MR. GORMAN: It is, Your Honor, as to the first car on the scene.

THE COURT: So.

MR. GORMAN: He now gives it as the reason they—

THE COURT: Let's move on."

On direct examination the witness had testified that there were other cars behind the car in which he was riding when the decedent passed him. The witness further stated that after the accident the car he was in stopped but then left the scene without going to the wrecked car. He stated that the reason they left to get help was because there were other cars coming up behind them. The complained-of interrogation was in relation to the witness' explanation for leaving the scene of the accident and in no way related to evidence concerning the movement of the decedent's vehicle. These questions were not in violation of the *in limine* order or the later rulings of the court at trial.

Michael Stumpf, the driver of the car decedent was passing when the accident occurred, was called as a witness

for defendant and the following occurred:

> "Q. As you are going south, the way you were, at some point do you cross the 70 overpass?
>
> MR. STOBBS [plaintiff's counsel]: Objection, Your Honor. It's irrelevant and immaterial.
>
> THE COURT: Go ahead.
>
> MR. GORMAN [defense counsel]: I am just bringing him—
>
> THE COURT: Okay.
>
> MR. GORMAN: Do you cross the 270 overpass that evening?
>
> A. Yes.
>
> Q. And at that time right there around the overpass, did you pass a vehicle?
>
> MR. STOBBS: Objection again, Your Honor. That's immaterial. The Court has ruled upon it.
>
> THE COURT: How far is this from the scene?
>
> MR. GORMAN: This is what, two miles, Mike?
>
> THE COURT: The objection is sustained.
>
> MR. GORMAN: Your Honor, it is not as to anything regarding speed at this point. It's just identification of the vehicles.
>
> MR. STOBBS: The objection stands, Your Honor. The Court has ruled upon it.
>
> THE COURT: The objection is sustained."

This line of questioning did not relate to speed or movement of the decedent's vehicle and therefore did not violate the restrictions of the *in limine* order or the court's rulings.

The same can be said of the exchange occurring during the testimony of Sue Saathoff:

> "Q. Now had— Did the car that you saw in the field— Had you seen it there any time earlier?
>
> MR. STOBBS: Objection, Your Honor, irrelevant.
>
> MR. GORMAN: This is just identity of the cars.
>
> MR. STOBBS: Not fixed as to place, time.
>
> THE COURT: You will have to specify what period.
>
> MR. GORMAN: Back at the overpass of 270, did any vehicles pass you going in a southerly direction—

MR. STOBBS: Objection.
THE COURT: Sustained."

The restriction of the *in limine* order which this question supposedly violates is contained in paragraph number one of the motion set out earlier in this opinion. The restriction was as to the "purported speed of decedent's vehicle and the vehicle passed by the decedent some two miles from the scene of the accident." Nothing in this interrogation relates to speed. As defense counsel stated, the question only went to the identity of the car in the field. We see no violation here of the *in limine* order.

The order granting the new trial stated that the *in limine* order was violated in the defense counsel's questioning of witnesses Loyet, Niggli, Strohbeck, Stumpf and Saathoff. We have had the benefit of the transcript of the testimony of these witnesses in reviewing the decision of the trial judge, a benefit he did not have when considering the motion for a new trial. As indicated, a review of the interrogation of these witnesses by defense counsel reveals no violation of the limitations of the *in limine* order.

For the reasons stated, we conclude that the plaintiff suffered no prejudice and was not denied a fair trial because of the conduct of defense counsel complained of. The granting to the plaintiff of a new trial was therefore a clear abuse of discretion. The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.