THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID STARKS, Defendant-Appellant.

Third District   No. 3—94—0308

Opinion filed April 15, 1997.

Kenneth D. Brown (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MICHELA delivered the opinion of the court:

In July 1989, defendant, inmate David Starks, along with inmates Salvatore Giancana and William Cabrera, were charged by indictment with two counts of first degree murder (720 ILCS 5/9—1(a) (West 1992)) for the death of a Stateville prison guard, Lawrence A. Kush, Jr. (the victim). A Will County jury convicted defendant of both counts. The jury directed the court not to impose the death penalty, and the court sentenced defendant to a term of natural life imprisonment.

On appeal, defendant raises numerous issues that can be generally described as errors concerning: shackling, jury selection, admission and publication to the jury of autopsy photos, improper prosecutorial remarks during closing argument, and whether he was denied his right to a fair trial by an impartial jury. For the following reasons, we affirm.

Prior to trial, defense counsel requested that the court allow defendant's legs to be unshackled during trial. Although the court denied this request, it took steps to insure that the jury would not see defendant shackled, and it permitted defendant to be present without handcuffs.

During *voir dire*, certain venire members were examined outside defendant's presence. Defendant did not object to this questioning. However, defense counsel moved for a mistrial, citing *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), and arguing that the People had exercised certain peremptory challenges for

discriminatory purposes. The court found that the People's reasons for excluding the venire members were nondiscriminatory and denied the motion.

At trial, testimony was heard by the People's witnesses and, over defense counsel's objection, the court admitted and published to the jury autopsy photos of the victim. Following the People's case in chief, the defense rested without presenting any evidence.

Closing arguments were heard, and following deliberations, the jury convicted defendant of both counts. The jury directed the court not to impose the death penalty and defendant was sentenced to a term of natural life imprisonment. The court denied defendant's post-trial motion and defendant appeals.

## I. SHACKLING

■ The issue of shackling is one that rests within the sound discretion of the court, and absent an abuse of that discretion, a court's decision will not be overturned on appeal. *People v. Boose*, 66 Ill. 2d 261 (1977). A defendant may be shackled when there is reason to believe that he may attempt to escape or he poses a threat to the safety of the courtroom or to maintain order during trial. *Boose*, 66 Ill. 2d at 266.

In this matter, the court based its denial of defendant's request to remove his shackles on the following permissible factors: (1) the charge against defendant was serious; (2) shackles were necessary to prevent flight; (3) defendant's prior record was indicative of other acts of violence, *i.e.*, at trial he was serving a sentence for a 1987 conviction of attempted murder, aggravated battery, and armed robbery; (4) there existed a potential for mob action or revenge from the victim's family; and (5) the layout of the courthouse presented security problems of "monstrous proportions." See *Boose*, 66 Ill. 2d at 266-67.

Evidence in the record supports the court's decision, and it is apparent from the record that the court balanced defendant's right to a fair trial against permissible factors favoring shackling him. We therefore find that the court did not abuse its discretion in requiring defendant to remain shackled.

## II. PEREMPTORY CHALLENGES

■ Defendant next contends that he was denied a fair trial due to the People's violation of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). The "command of Batson is to eliminate, not merely to minimize, *** discrimination in jury selection." *United States v. David*, 803 F.2d 1567, 1571 (11th Cir. 1986).

Defendant asserts that, during *voir dire*, the People peremptorily

challenged an African-American, Samuel Abdullah (Abdullah), and an Asian-American, Yong Gibson (Gibson), for pretextual reasons that were not race-neutral.

A "trial court's determination on the ultimate issue of discrimination is a finding of fact which turns on an evaluation of credibility and, therefore, is entitled to great deference on appeal [citation] and will not be reversed unless it is clearly erroneous." *People v. Hudson*, 157 Ill. 2d 401, 426 (1993).

In assessing an explanation, the focus of the court's inquiry is on the *facial* validity of the explanation, and absent an inherent discriminatory intent in the explanation, the reason offered is deemed neutral. *Hernandez v. New York*, 500 U.S. 352, 360, 114 L. Ed. 2d 395, 406, 111 S. Ct. 1859, 1866 (1991). The explanation is not required to be plausible or persuasive, and a " ' "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection.' " *People v. Munson*, 171 Ill. 2d 158, 175 (1996), quoting *Purkett v. Elem*, 514 U.S. 765, 769, 131 L. Ed. 2d 834, 840, 115 S. Ct. 1769, 1771 (1995).

Courts are only required to accept one of the explanations advanced by the People concerning each venire member. *People v. Britt*, 265 Ill. App. 3d 129, 134 (1994), citing *People v. Andrews*, 155 Ill. 2d 286, 294 (1993). Here, each of the People's explanations is devoid of any reference to the individual's race, each contains an acceptable basis that legitimizes the use of the peremptory challenge, and a person may be peremptorily challenged on the basis of courtroom conduct or demeanor. See *Munson*, 171 Ill. 2d at 178. The People noticed that, when asked about the death penalty, Abdullah's mannerisms displayed hesitation, *i.e.*, he clutched his hand and broke eye contact for the first time. Also, the People believed that it would have bothered Gibson to deal with the death penalty. Further, the People observed that Gibson was quiet and did not appear to be a strong juror, *i.e.*, the People questioned whether she would effectively participate in deliberations.

The record indicates that defense counsel did not state that the People's mannerism and demeanor concerns did not exist, he only stated that he did not witness them. As the trial court is in a superior position to determine the credibility of the People, and it determined that their stated explanations were nondiscriminatory, we are unable to say that the trial court's decision was clearly erroneous.

### III. RIGHT TO BE PRESENT AND TO BE TRIED BY AN IMPARTIAL JURY

■ This court in *People v. Bennett*, 282 Ill. App. 3d 975, 980 (1996),

clearly stated that a defendant's exclusion from *voir dire* is an impairment of the right to be present and is presumed prejudicial. It should be noted, however, that the defendant in *Bennett* objected. In this case, defendant neither objected to the court's questioning of jurors outside his presence, nor did he file a post-trial motion containing such objection. Therefore, defendant has waived this issue pursuant to *People v. Enoch*, 122 Ill. 2d 176 (1988). However, following *People v. Bean*, 137 Ill. 2d 65, 80 (1990), this court may consider the issue under a plain error standard of review pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). Plain error occurs when a defendant is deprived of a substantial right or when an error is made in a case where the evidence is closely balanced. *Bean*, 137 Ill. 2d at 80.

The evidence in this case is not closely balanced. Defendant neither questioned the sufficiency of the People's evidence, nor did he present a defense. In *Bean*, 137 Ill. 2d at 80, because the evidence was not closely balanced, the court stated that only if defendant was deprived of a substantial right, *i.e.*, a constitutional right, could it find that his absence from part of *voir dire* was plain error.

Defendant has the right to appear and defend himself in person at all stages of trial, including jury selection. Ill. Const. 1970, art. I, § 8; U.S. Const., amend. XIV. However, the Illinois Supreme Court and the United States Supreme Court have limited the situations where the denial of the right to be present is a constitutional violation.

Under Illinois constitutional law, defendant's right to be present is not absolute. Defendant is guaranteed the right to be present at any stage of a criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure. *People v. Jones*, 185 Ill. App. 3d 208, 214 (1989), citing *Kentucky v. Stincer*, 482 U.S. 730, 745, 96 L. Ed. 2d 631, 647, 107 S. Ct. 2658, 2667 (1987). Jury selection is a critical stage of trial. *Bean*, 137 Ill. 2d at 84.

The federal right of criminal defendants to be present at trial is not an absolute constitutional right, but arises from the due process clause of the fourteenth amendment. *Stincer*, 482 U.S. at 745, 96 L. Ed. 2d at 647, 107 S. Ct. at 2667; *United States v. Gagnon*, 470 U.S. 522, 526, 84 L. Ed. 2d 486, 490, 105 S. Ct. 1482, 1484 (1985); *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 78 L. Ed. 674, 678, 54 S. Ct. 330, 332 (1934).

A defendant's due process right of presence under the United States Constitution is violated only when his absence results in his being denied a fair and just trial. *Snyder*, 291 U.S. at 107-08, 78 L. Ed. at 679, 54 S. Ct. at 333.

Since the instant defendant was not present during a portion of

*voir dire,* the fairness of his trial centers upon the impartiality of his jury. Like the Illinois Constitution, the United States Constitution guarantees defendant an impartial jury, as opposed to a jury of choice. *People v. Henderson,* 142 Ill. 2d 258, 291-92 (1990). Therefore, the issue becomes whether defendant's absence from individual *voir dire* sessions resulted in an unfair trial because it caused him to be tried and convicted by a jury prejudiced against him.

Defendant disputes the fairness of his trial due to the questioning outside his presence of two jurors, John Greenwald (Greenwald) and Brian Smith (Smith), and he questions the impartiality of his jury because both served on the jury that convicted him.

Although defendant voiced no objections, there is no indication in the record that he waived his right to be present. Further, defense counsel has no power on defendant's behalf to waive this right. *Hopt v. Utah,* 110 U.S. 574, 28 L. Ed. 262, 4 S. Ct. 202 (1884); *People v. Mallett,* 30 Ill. 2d 136 (1964).

The record reveals the following concerning the *voir dire* that occurred out of defendant's presence. In regard to Greenwald, after he had been impaneled he sent a note to the court that resulted in him being questioned outside of defendant's presence. During this questioning, Greenwald was asked whether being selected as a juror, and forced to miss a business trip his company had mandated him to take, would affect his ability to pay attention or to be fair and impartial. He replied "No." When he indicated that he was uncertain what his company would do if he missed the trip, he was asked if that would "cause [him] any concern *** while *** deliberating or listening," and he responded, "No, I don't think so."

In regard to Smith, while in defendant's presence he revealed that his brother was the victim of a pending attempted murder case. Smith was asked if there was anything about that case that would cause him a problem in being fair and impartial in this matter, and he stated "No." When asked to describe the situation surrounding his brother's incident, Smith asked to speak in private because he did not want to jeopardize his brother's case.

While outside defendant's presence, Smith noted the circumstances surrounding his brother's shooting, *i.e.,* location, injury, etc. The court again asked him if his brother's pending case would cause him problems with being fair and impartial to either side in this case, and he responded "No."

Defendant contends that had he been present to witness Greenwald's and Smith's responses to the court's questions, one or both of them could have been peremptorily challenged and excluded. This contention was successfully raised by the defendant in *Bennett*; however, *Bennett* is distinguishable from the instant matter.

In *Bennett*, defendant was excluded by the court from 17 individual *voir dire* sessions involving 16 of 29 potential jurors, five of whom served on the jury that convicted him. Initially, defendant was present when the court questioned jurors in a hallway; however, the court ordered him back into the courtroom for security reasons and its erroneous belief that defendant was not entitled to be present. In *Bennett*, we held that defendant was denied his right to be present and his right to an impartial jury; however, because that defendant had preserved his issue for appeal, such finding was reached under a harmless error standard of review, *i.e.*, requiring a showing beyond a reasonable doubt that the error did not contribute to defendant's conviction.

Unlike the defendant in *Bennett*, the instant defendant was excluded from the questioning of jurors outside of the courtroom due to his shackles. Further, the record shows that defendant had the opportunity to assess both jurors' ability to serve prior to their removal from the courtroom. At the time Greenwald was questioned outside defendant's presence, he had been tendered and accepted as a juror. After this additional questioning, the court allowed the parties to back strike and exercise a peremptory challenge against Greenwald. Further, defendant was aware that Smith's brother had been the victim of an attempted murder prior to the questioning of Smith outside his presence. The record also indicates that the court granted defense counsel's requests "to go over all these jurors with [defendant]." Therefore, it appears that defendant was afforded the opportunity to strike both jurors after their questioning outside his presence.

Although we strongly condemn the practice of conducting *voir dire* outside a defendant's presence, in this situation we find that defendant failed to prove that such questioning resulted in the impaneling of a prejudiced jury under Illinois or United States constitutional law. Thus, no plain error occurred.

## IV. AUTOPSY PHOTOS

■The admission of photos of a murder victim is within the sound discretion of the trial judge, whose decision will not be reversed absent an abuse of that discretion. *People v. Brown*, 172 Ill. 2d 1 (1996).

We note that autopsy photos of a crime victim are not necessarily cumulative merely because there is also oral testimony describing what the photos depict. *People v. Hefley*, 109 Ill. App. 3d 74 (1982). Further, autopsy photos may be admissible to aid the jurors' understanding of expert testimony. *People v. Lucas*, 132 Ill. 2d 399 (1989).

The autopsy photos of the present case illustrated the testimony of forensic pathologist Dr. Larry Blum concerning the location of the victim's injuries, the force used, and the cause of death. Regardless of the fact that defendant did not dispute the cause of death or the force used, the People may still prove every element and relevant fact of the offense charged, and if autopsy photos are relevant to establish any such fact, they are admissible despite their gruesome nature. See *People v. Bounds*, 171 Ill. 2d 1, 46-47 (1995).

In its ruling, the court stated that the autopsy photos were material on the issues of cause of death and force used to inflict injuries. The court also found that because the photos depicted an autopsy that was "clinically done" and "very neat," it did not "see that these [autopsy photos] would be unduly prejudicial." The court was careful to weigh the probative value of the autopsy photos against any potential prejudice to defendant, and we find that the court did not abuse its discretion in admitting and publishing them to the jury.

## V. PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENTS

█ Not only are the People prohibited during closing arguments from making comments not based upon, or misstating, the evidence (*People v. Linscott*, 142 Ill. 2d 22 (1991)), they are also prohibited from making comments that disparage the integrity of defense counsel. *People v. Lyles*, 106 Ill. 2d 373 (1985).

During closing argument, the People told the jury that they would hear "certain things brought up by the Defense *** [that] are either based on speculation rather than the evidence in this case or are puffs of smoke or smoke screens without any fire." Defense counsel objected and the court instructed the jury that the "last comment of counsel for the State is withdrawn."

Although in *People v. Emerson*, 97 Ill. 2d 487 (1983), our supreme court found the People's reference to a "smoke screen" during closing argument improper, we find that case distinguishable. In *Emerson*, unlike this case, the People made additional disparaging comments when they went on to describe the smoke screen as " 'composed of lies and misrepresentations and innuendos.' [The prosecutor also stated] that all defense attorneys try to 'dirty up the victim.' " 97 Ill. 2d at 497. The People's comment in this case does not rise to the level of disparaging the integrity of the defense as found in *Emerson*. In light of this fact, and considering the court instructed the jury that the comment was withdrawn, we find that defendant was not prejudiced by the People's remark.

During rebuttal closing arguments, the People commented that

had DNA testing been performed on the blood found on defendant's shoes, "DNA *** would have told us that it was [the victim's] blood." Defense counsel objected, arguing that the People's comments were not based on the evidence. However, in defense counsel's closing argument, he also commented on DNA testing, stating that "[t]here could have been enough blood sample here to run a DNA test ***. It would have probably told us a lot. It could have excluded that blood as being [the victim's] blood."

Considering defendant may not claim error when the People's remarks have been invited and provoked by defense counsel (*People v. Dixon*, 91 Ill. 2d 346 (1982)), and in light of the curative instruction by the court, *i.e.*, that what lawyers say during closing arguments is not evidence and any comments not based on evidence must be disregarded, we find that defendant was not prejudiced by the remark and was not denied a fair trial.

## CONCLUSION

Based on the foregoing, we find that defendant was not denied his right to a fair trial by an impartial jury, and we affirm his conviction on both counts.

Affirmed.

LYTTON, P.J., and HOMER, J., concur.