THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRANCE LOVE, Defendant-Appellant.

Fourth District   No. 4—00—0942

Opinion filed January 16, 2002.

COOK, J., dissenting.

Daniel D. Yuhas and Duane E. Schuster, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and James C. Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE TURNER delivered the opinion of the court:

In July 2000, the State charged defendant, Terrance Love, with aggravated battery (720 ILCS 5/12—4(b)(6) (West 2000)). After a September 2000 trial, the jury found defendant guilty of aggravated battery. In October 2000, the trial court sentenced defendant to five years' imprisonment to be served consecutive to the sentences in four other cases (People v. Love, No. 00—CF—71 (Cir. Ct. Livingston Co.); People v. Love, Nos. 93—CF—1632, 93—CF—1521, 93—CF—2656 (Cir. Ct. Du Page Co.)).

Defendant appeals, asserting (1) the trial court abused its discretion by requiring him to wear a mask at his jury trial, (2) the trial court's failure to remedy violations of an order *in limine* constituted plain error, (3) he was denied effective assistance of counsel, and (4) his consecutive sentence violates his rights to due process and trial by jury under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). We affirm.

# I. BACKGROUND

On April 4, 2000, defendant was an inmate at the Pontiac correctional facility (Pontiac). Glendal French was the correctional officer in charge of gallery one where defendant was located. As Officer French was taking another inmate for a shower, he heard defendant banging on his cell door. When Officer French went to defendant's cell, he discovered defendant had ripped his bedsheets and tied a strip of sheet around his neck. Defendant stated he would commit suicide unless he saw a captain or lieutenant. Officer French asked defendant twice to stick his arms out so he could handcuff him, and defendant refused. After Captain Settleworth arrived and instructed defendant

to comply with the handcuffing, defendant did so, and Officer French handcuffed him. Officer French opened the cell door, and defendant stepped out, looked directly at Officer French, and spit in his face. Officer French was not injured. In July 2000, the State charged defendant with aggravated battery for his actions on April 4, 2000.

At the beginning of defendant's September 2000 trial and out of the presence of the jury, the trial court addressed the issue of defendant's propensity to spit. The prosecutor stated the last time defendant was in court, defendant told her he wanted to spit on her. The trial court asked Jerry Rork, a court security officer, about defendant's behavior that morning. Rork stated defendant had been behaving since he had been in the courthouse. Defense counsel stated he had talked to defendant a few moments before trial and defendant had been "somewhat belligerent."

The trial court then questioned Scott Matthews, a correctional officer at Tamms correctional center (Tamms), who transported defendant from Pontiac to the courthouse. Officer Matthews stated defendant had been verbally aggressive and talking about spitting on people. Pontiac officers suggested Officer Matthews should have defendant wear a mask while being transported because of his behavior the prior night. According to Officer Matthews, as defendant was leaving Pontiac, defendant threatened to spit on the Pontiac officers.

The trial court took sworn testimony from Troy Quinley, a superintendent at Pontiac. Superintendent Quinley testified when defendant arrived from Tamms, he was unhappy with the mattress he received. Before officers could obtain a new mattress, defendant spit in Officer Bradshaw's face. As Officer Bradshaw put a mask on defendant, defendant bit the officer.

At the trial court's request, the prosecutor provided defendant's criminal history, including the following: defendant was currently serving a 40-year sentence for armed robbery; had been convicted of assault on staff for spitting; had an aggravated battery conviction for breaking a sergeant's hand; and had two criminal-damage-to-government-property charges pending against him.

The trial court also talked with the defendant. According to defendant, he spit in the officer's face the night before trial because he felt the officer was not treating him like a human being. Defendant told the court he was not going to spit on anybody in the courtroom.

The trial judge noted he had received a communication from the warden at Tamms, indicating defendant was a moderate escape risk and considered a high aggression level due to a history of assaultive behavior. The trial judge asked if a safe distance existed for people to be away from defendant. One officer replied, "[t]hey are too close."

The State's position was defendant should remain masked. Defense counsel stated due to his prior contacts with defendant, he was unable to represent to the court defendant would not misbehave in the courtroom. The trial court found it necessary for defendant to remain masked during the jury trial based on defendant's history of misconduct. Defendant chose to be present in the courtroom even with the mask.

The trial court then asked for suggestions on how to explain the mask to the jury. The State suggested the trial court not comment on the mask at all. Defense counsel also preferred the mask not be mentioned. The trial court decided to "leave it go at that."

The State presented two witnesses, Officer French and Jack Libby, a correctional officer at Pontiac responsible for investigating possible criminal cases against inmates. The State asked Officer French to identify defendant and "describe something he is wearing." Officer French replied, "[w]hite shirt, mask on his face." The State asked Officer Libby the same question to which Officer Libby replied, "[h]e is wearing a white shirt with a mask over his face."

At the conclusion of the trial, the jury found defendant guilty of aggravated battery. In October 2000, the trial court sentenced defendant as stated. No posttrial motion was filed. This appeal followed.

## II. ANALYSIS

### A. The Mask

Defendant first argues the trial court abused its discretion when it forced him to wear a mask during his jury trial. We note defendant was also shackled during trial, but defendant does not challenge the trial court's imposition of that restraint. The State argues defendant has waived this issue by not (1) objecting in the trial court and (2) filing a posttrial motion. Defendant asserts the trial court's error constitutes plain error (134 Ill. 2d R. 615(a)).

■ To preserve an alleged error for review, the defendant must (1) make an objection at trial *and* (2) file a written posttrial motion raising the issue. *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). While the parties disagree about whether defendant objected to wearing the mask at trial, defendant did not file a posttrial motion. Thus, defendant did not properly preserve the issue for review. However, defendant argues we should review the issue under the plain error rule.

■ The plain error rule may be invoked to protect a defendant from serious injustices and to preserve the integrity and reputation of the judicial process under either of the following circumstances (*People v. Bunning*, 298 Ill. App. 3d 725, 727, 700 N.E.2d 716, 718 (1998)): (1)

the evidence was closely balanced, or (2) the error was of such magnitude the accused was deprived of a substantial right and denied a fair trial (*People v. Armstrong*, 183 Ill. 2d 130, 151, 700 N.E.2d 960, 969 (1998)). Here, the evidence against defendant was overwhelming. Thus, defendant must show he was denied a fair trial.

■ The issue of whether defendant was denied a fair trial because the court required him to wear a mask during trial to achieve courtroom security is one of first impression for Illinois courts. Other cases involving the courtroom restraint of a defendant have fallen into three categories: (1) those involving a defendant who stands trial in shackles, (2) those where an excessive number of guards are present in the courtroom during trial, and (3) those where the defendant's jury sees the defendant in shackles for a short period in the courthouse. See *People v. Walsh*, 80 Ill. App. 3d 754, 768, 400 N.E.2d 587, 597-98 (1980). In those cases, the restraint has been permissible where the court reasonably believes (1) the defendant may try to escape, (2) the defendant may pose a threat to the safety of the people in the courtroom, or (3) restraint is necessary to maintain order during the trial. See *People v. Boose*, 66 Ill. 2d 261, 266, 362 N.E.2d 303, 305 (1977). In this case, the record indicates defendant's prior conduct raised concerns about safety and the ability to maintain order. Because the masking of a defendant to prevent spitting addresses some of the same concerns as other types of restraints, we choose to follow the analysis employed in other restraint cases.

The leading Illinois case on restraining a defendant in the courtroom is *Boose*, 66 Ill. 2d 261, 362 N.E.2d 303, where the Supreme Court of Illinois addressed the issue of shackling a defendant during a competency hearing. There, the court noted the shackling of an accused should be avoided if possible because it (1) tends to prejudice the jury against the accused, (2) restricts his ability to assist counsel during trial, and (3) offends the dignity of the judicial process. *Boose*, 66 Ill. 2d at 265, 362 N.E.2d at 305. Nevertheless, a defendant may be restrained where the court reasonably believes (1) the defendant may try to escape, (2) the defendant may pose a threat to the safety of the people in the courtroom, or (3) restraint is necessary to maintain order during the trial. *Boose*, 66 Ill. 2d at 266, 362 N.E.2d at 305. The determinations whether to restrain a defendant and what restraints are most suitable are within the trial court's discretion, and a reviewing court will not overturn those decisions unless the trial court abused its discretion. *Boose*, 66 Ill. 2d at 266-67, 362 N.E.2d at 305-06.

In making the determination whether to restrain a defendant, the trial court is to hold proceedings outside the presence of the jury. During those proceedings, the defense counsel should have the opportunity

to present reasons why the defendant should not be restrained, and the trial court should state for the record the reasons for restraining the defendant in the courtroom. *Boose*, 66 Ill. 2d at 266, 362 N.E.2d at 305.

■ The *Boose* court also listed a number of factors a trial court should consider in determining whether to shackle a defendant, including, but not limited to:

" '[T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.' " *Boose*, 66 Ill. 2d at 266-67, 362 N.E.2d at 305-06, quoting *State v. Tolley*, 290 N.C. 349, 368, 226 S.E.2d 353, 368 (1976).

■ Based on the record, we find no abuse of discretion in the trial court's requirement for defendant to wear a mask during trial. Outside the presence of the jury, the trial court held a lengthy proceeding that included the questioning of the prosecutor, defense counsel, defendant, a court security officer, a correctional officer, and the sworn testimony of a correctional superintendent. At the conclusion of the proceeding, the trial court found it necessary to keep the mask on defendant during trial because of defendant's history of misconduct. Further, both defense counsel and defendant had the opportunity to present reasons why defendant should not have worn a mask as required in *Boose*, 66 Ill. 2d at 266, 362 N.E.2d at 305.

The trial court's consideration of the applicable *Boose* factors is evidenced by the record. As to defendant's past criminal record, the court asked the prosecutor to present defendant's criminal history and the current charges pending against him. Defendant's past convictions included an assault on staff for spitting and aggravated battery for breaking a sergeant's hand. The trial court also noted defendant was on trial for aggravated battery for spitting on a correctional officer.

Regarding defendant's temperament and character, the trial court noted it had received a communication from the warden at Tamms, stating defendant was considered a high aggression level. The communication also noted defendant had violated the Department of Corrections rules 6 times for fighting, 20 times for assault, 5 times for sexual misconduct, 6 times for arson, once for dangerous disturbance, once for dangerous contraband, and twice for violent assaults. As to

defendant's temperament right before trial, the trial court asked the court security officer about defendant's behavior in the courthouse, a correctional officer about defendant's behavior before coming to the courthouse, and defense counsel about his impressions of defendant the morning of the trial. While the court security officer stated defendant had been behaving in the courthouse, the correctional officer stated defendant had threatened to spit on Pontiac correctional officers before coming to the courthouse, and defense counsel described defendant's mood before trial as "somewhat belligerent."

As to the threat of harm to others, the prosecutor stated defendant had threatened to spit on her the last time he was in court, which defendant did not deny when questioned by the trial court. The transporting correctional officer stated defendant had threatened to spit on correctional officers earlier that morning. Additionally, a Pontiac superintendent testified defendant had spit on and bit a correctional officer the night before trial.

Moreover, the trial court addressed the nature and physical security of the courtroom and the adequacy and availability of alternative remedies. The trial court asked the officers present in the courtroom whether defendant could be placed where he could not spit on people. One officer responded, "[t]hey are too close." Defendant asserts he could have been placed in a different position in the courtroom to eliminate his ability to spit on people. We will not second-guess the trial court's decision whether defendant could have been located elsewhere in the courtroom because the trial court was in the better position to assess the layout of the courtroom.

Defendant argues he should not have been masked because he had behaved while in the courthouse. However, *Boose* permits the consideration of defendant's prior acts and his general character. See *Boose*, 66 Ill. 2d at 266-67, 362 N.E.2d at 305-06. Other Illinois courts have found no abuse of discretion in shackling a defendant where the shackling was based on factors other than defendant's behavior in the courtroom. See *People v. Buss*, 187 Ill. 2d 144, 217-18, 718 N.E.2d 1, 41-42 (1999); *People v. Starks*, 287 Ill. App. 3d 1035, 1037, 679 N.E.2d 764, 767 (1997).

The present case is distinguishable from this court's decision in *People v. Brown*, 45 Ill. App. 3d 24, 358 N.E.2d 1362 (1977), which was decided before the supreme court's decision in *Boose*. There, we held the defendants were denied a fair trial because they were unjustifiably handcuffed during trial. Unlike this case, the only statements regarding the need for restraining the defendants were (1) the unsupported assertions of the prosecutor that one of the defendants threatened him, and (2) the fact two of the defendants had attempt (escape)

charges pending. This court suggested sworn testimony out of the jury's presence could have been employed to provide a demonstrable need for the shackling procedures (*Brown*, 45 Ill. App. 3d at 28, 358 N.E.2d at 1364), which is what the trial court did in the present case.

Defendant further contends even if the mask were necessary, the trial court did not make adequate efforts to avoid prejudice in its choice of method to mask defendant. Defendant asserts a trial court has an obligation, where possible, to obscure shackles and other restraints. See *People v. Johnson*, 54 Ill. App. 3d 970, 972, 370 N.E.2d 611, 612 (1977) (noting a better practice is to have prison officers in civilian dress).

Unlike shackles, a device to prevent someone from spitting cannot be obscured from the jury because it must cover the mouth. Here, the mask chosen by the trial court was one the jury could construe as a health device and not a restraint device. In asking the trial court to eschew comment on the mask, defense counsel stated the jury might assume defendant had a cold or some other ailment. Defendant himself stated he would behave himself during trial because he did not like wearing "this mask like I got a disease or something." Additionally, the jury was never informed the mask was being used to restrain defendant from spitting. Thus, even though defendant was on trial for spitting, defendant's wearing of the mask did not necessarily imply to the jury the trial court was restraining him from spitting.

Defendant argues the trial court had a plethora of possibilities in dealing with defendant's spitting without using a mask. However, the only suggestion defendant provides is a different place in the courtroom, which the trial court did address. The trial court gave defendant the option of being present in the courtroom with a mask or not being present. Further, defendant does not assert the chosen mask interfered with his ability to assist his counsel.

Accordingly, the mask was necessary to protect the safety of the people in the courtroom and to maintain order, and thus the trial court did not abuse its discretion. Further, the restraint imposed on defendant was appropriate in light of all the circumstances presented at trial. Because we find the trial court did not abuse its discretion, the trial court did not commit plain error.

## B. Motion *in Limine*

■ Defendant next argues the trial court erred by not remedying the prosecutor's violation of an order on the motion *in limine*. Defendant also did not preserve this error for review, and thus our review is limited to plain error.

After the trial court determined defendant had to wear a mask

during trial and defendant stated he wanted to be present in the courtroom, the following exchange took place:

"THE COURT: All right. Do you have a suggestion, [defense counsel], as to what I tell the jury as to why he is masked?

[PROSECUTOR]: I think you are best not to comment on it at all.

THE COURT: I am going to mention we have taken certain security precautions and leave it at that.

[DEFENSE COUNSEL]: I actually think I would prefer, Your Honor, that it not be mentioned. I think—I don't think there is a good way to mention it. So I think if it's not mentioned, at least it might give him the benefit of the doubt assuming he has got some cold or something today.

THE COURT: All right. We will leave it go at that."

Defendant asserts his trial counsel orally made a motion *in limine* to prohibit anyone in the courtroom from mentioning defendant's mask. The State contends the trial court merely complied with defense counsel's request that the court not mention the mask to the jury.

Our review of the record indicates the court acquiesced in defense counsel's request that the mask not be mentioned by the trial judge. Although not specifically stated or put into a written order, the court's decision implied counsel was also to avoid mentioning the mask.

We note imperatively an *in limine* order must be clear, and all parties concerned have an adequate understanding of its limitations. *Reidelberger v. Highland Body Shop, Inc.*, 83 Ill. 2d 545, 550, 416 N.E.2d 268, 271 (1981). Oral motions *in limine* provide fertile ground for confusion and misunderstanding during trial. *Crawford County State Bank v. Grady*, 161 Ill. App. 3d 332, 341, 514 N.E.2d 532, 538 (1987).

Here, the State did not make reference to defendant's mask in counsel's arguments or in questions posed to witnesses. Instead, when asked to identify defendant, the witnesses described defendant as the person wearing the mask. We find the references to the mask in the identification of defendant did not deny defendant a fair trial. The mask was clearly visible to the jury, and thus the witnesses did not tell the jurors anything they could not see for themselves. Further, each witness only mentioned the mask once and did not explain or suggest the purpose of the mask. Any reprimand of the witnesses and the prosecutor or an admonishment to the jury to disregard the references to the mask as suggested by defendant would have drawn attention to the mask and raised the jury's curiosity as to its nature. Accordingly, we do not find plain error.

## C. Ineffective Assistance of Counsel

Defendant also contends his trial counsel was ineffective for fail-

ing to object when the State's witnesses referred to defendant's mask and for not filing a posttrial motion.

■ We review ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence, and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

To satisfy the deficient-performance prong of *Strickland*, a defendant must show his counsel's performance was so inadequate that counsel was not functioning as the "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). Courts measure counsel's performance by an objective standard of competence under prevailing professional norms. Further, to establish deficient performance, the defendant must overcome the strong presumption the challenged action or inaction may have been the product of sound trial strategy. Matters of trial strategy are generally immune from claims of ineffective assistance of counsel. *People v. Smith*, 195 Ill. 2d 179, 188, 745 N.E.2d 1194, 1200 (2000).

■ Defendant first asserts his counsel should have objected when the State's witnesses' referred to defendant's mask in making their identification. As a general rule, trial strategy encompasses decisions such as what matters to object to and when to object. *People v. Pecoraro*, 144 Ill. 2d 1, 13, 578 N.E.2d 942, 947 (1991). Here, trial counsel may not have objected for fear the objection would have drawn more attention to the mask. Thus, we find defense counsel's failure to object was trial strategy. We note this case is distinguishable from *People v. Moore*, 279 Ill. App. 3d 152, 157, 663 N.E.2d 490, 495 (1996), where the reviewing court found defense counsel ineffective for failing to object to a witness's comment on defendant's exercise of his right to remain silent. While a comment on the exercise of the right to remain silent can serve as the sole basis for reversal (*Doyle v. Ohio*, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245 (1976)), the presumption of innocence is tempered by the need for courtroom security and order (see *In re Staley*, 67 Ill. 2d 33, 37-38, 364 N.E.2d 72, 73-74 (1977)). Additionally, we find defendant was not prejudiced by the failure to object because of the overwhelming evidence against him. Accordingly, defendant failed to establish both prongs of the *Strickland* test.

As to the failure to file a posttrial motion, the *Strickland* court noted when a case is more easily decided on the prejudice ground,

rather than counsel's representation was constitutionally deficient, the court should do so (*Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069). To satisfy the prejudice prong, defendant must show his counsel's errors were so serious as to deprive the defendant of a fair trial. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. The Supreme Court of Illinois has held the plain error rule provided by Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a)) protects a defendant from the prejudice caused by his counsel's failure to preserve an error because the rule allows the reviewing court to consider unpreserved errors affecting substantial rights. *People v. Carlson*, 79 Ill. 2d 564, 585, 404 N.E.2d 233, 242-43 (1980). Having held none of the forfeited errors presented on appeal would have resulted in a new trial for defendant, the failure to preserve those errors did not prejudice him. See *People v. Alexander*, 212 Ill. App. 3d 1091, 1105, 571 N.E.2d 1075, 1085 (1991).

Accordingly, defendant received effective assistance of counsel under *Strickland*.

### D. Consecutive Sentence

■ Defendant argues his consecutive sentence imposed under section 5—8—4(f) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—8—4(f) (West 2000)) violates his constitutional rights to due process and trial by jury under *Apprendi*. While defendant did not file a posttrial motion, a defendant can raise a constitutional challenge to a statute at any time (*People v. Bryant*, 128 Ill. 2d 448, 454, 539 N.E.2d 1221, 1224 (1989)). See *People v. Givens*, 319 Ill. App. 3d 910, 912, 747 N.E.2d 436, 438 (2001) (addressing an *Apprendi* challenge not raised in a posttrial motion).

Section 5—8—4(f) of the Unified Code provides, in pertinent part:

"A sentence of an offender committed to the Department of Corrections at the time of the commission of the offense shall be served consecutive to the sentence under which he is held by the Department of Corrections." 730 ILCS 5/5—8—4(f) (West 2000).

While the Supreme Court of Illinois has not addressed *Apprendi* concerns under section 5—8—4(f) of the Unified Code, the court has held *Apprendi* concerns are not implicated by consecutive sentencing (*People v. Wagener*, 196 Ill. 2d 269, 286, 752 N.E.2d 430, 441 (2001)). Likewise, that court has held *Apprendi* does not apply to consecutive sentences under section 5—8—4(a) of the Unified Code (*People v. Carney*, 196 Ill. 2d 518, 536, 752 N.E.2d 1137, 1147 (2001)). Accordingly, we find defendant's consecutive sentence under section 5—8—4(f) of the Unified Code is constitutional.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, P.J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent and would reverse and remand for a new trial. The potential of defendant's spitting did not pose a substantial threat to the people in the courtroom. Defendant's potential conduct did not threaten bodily injury. If defendant did spit on someone, the problem could be remedied by use of a paper towel. This case is not similar to a case where there is a concern that defendant will strike someone, thereby justifying shackles. If a court is concerned that defendant might speak out of turn, is the court justified in placing tape over defendant's mouth?

The jury was clearly invited to speculate why defendant was forced to wear the mask. If the jury speculated that defendant had some communicable disease, that would have been prejudicial to defendant. The jury would have thereby been inclined to view the charged spitting as a more serious offense than it was.

Defendant sat through this trial without removing the mask and without attempting to spit on anyone. The trial court should have accepted defendant's promise that he would not spit until the time that defendant broke that promise. Spitting in court in this case would have had its own consequences for defendant, who would thereby have insured his conviction.