(No. 90549.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BARNETT CARNEY, Appellee.

*Opinion filed June 21, 2001.*

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee G. Goldfarb, William D. Carroll and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, Deputy Defender, and Linda Olthoff, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Barnett Carney was convicted of first degree murder (720 ILCS 5/9—1(a) (West 1996)) and armed robbery (720 ILCS 5/18—2 (West 1996)). Defendant had been charged with intentional murder (720 ILCS 5/9—1(a)(1) (West 1996)), knowing murder (720 ILCS 5/9—1(a)(2) (West 1996)), and felony murder (720 ILCS 5/9—1(a)(3) (West 1996)), with the armed robbery count as the predicate felony. The circuit court sentenced defendant to consecutive terms of 29 years' imprisonment for murder and 10 years' imprisonment for armed robbery. The consecutive sentences were imposed pursuant to section 5—8—4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—4(a) (West 1996)).

The appellate court affirmed defendant's convictions (317 Ill. App. 3d 806, 817), but vacated his sentences and ordered them to run concurrently, finding section 5—8—4(a) of the Code unconstitutional under the decision of the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and the First District decision in *People v. Clifton*, 321 Ill. App. 3d 707 (2000). Defendant advanced other arguments on appeal that were not addressed by the appellate court. We granted the State's petition for leave to appeal (177 Ill. 2d R. 315). Consistently with our decision in *People v. Wagener*, 196 Ill. 2d 269 (2001), we now reverse the appellate court and remand for consideration of these issues.

## BACKGROUND

Defendant and a codefendant, Sean Tucker, were charged with the murder and armed robbery of Richard Frazier. On the evening of September 26, 1997, Frazier and Charles Epps were playing a game of dice outside a residence in Chicago. Epps' girlfriend, Tamika Johnson,

was standing nearby watching out for police. Three men approached Frazier and Epps. One of the men wore a Halloween mask and the other two wore hooded sweatshirts pulled tightly around their faces. Johnson, who was approximately 15 feet from the group, saw the man with the mask take money from Frazier, while holding a gun on him. She saw Frazier struggle with the man and then heard a shot. Frazier fell to the ground and the men ran away. Frazier died two weeks later from complications of the gunshot wound he sustained.

Police officers recovered a shell casing from the crime scene and spoke with Johnson and Epps. Defendant's mother gave consent to a search of her home. In defendant's bedroom, officers found a Halloween mask that belonged to defendant's sister. They recovered a handgun and clip from Tucker's home. A firearms expert testified that the shell casing found at the scene of the shooting had been fired by the gun retrieved from Tucker's home.

Defendant testified that after he was arrested, he declined to speak to the officers or to a woman who identified herself as an attorney. In rebuttal, Assistant State's Attorney Kathleen Muldoon testified that defendant agreed to speak to her on the day he was arrested. He told her that he and Tucker were driving around on the night of the shooting. They had a Halloween mask and a gun with them in the car. They saw the dice game between Frazier and Epps and stopped. Epps walked up to the car and told defendant and Tucker that Frazier was "sweet," meaning that he was an easy target. Defendant parked the car and he and Tucker walked over to the dice game. Tucker was wearing the mask and had the gun. Defendant pretended to rob Epps, while Tucker held the gun on Frazier. Defendant saw the two men struggle with each other and then Tucker shot Frazier.

The jury returned verdicts of guilty on first degree murder and armed robbery, using general verdict forms.

The circuit court entered judgment on the counts of intentional murder and armed robbery. At the sentencing hearing, the circuit court found that defendant had inflicted severe bodily injury on Frazier. Noting that defendant had been convicted of armed robbery, a Class X felony, the court imposed consecutive sentences.

## ANALYSIS

Section 5—8—4(a) of the Code provides in pertinent part:

> "When multiple sentences of imprisonment are imposed on a defendant at the same time, or when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State or in another state, or for a sentence imposed by any district court of the United States, the sentences shall run concurrently or consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury *** in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5—8—4(a) (West 1996).

The appellate court relied on *Apprendi* in finding section 5—8—4(a) of the Code unconstitutional. In *Apprendi*, pursuant to a plea agreement, the defendant pleaded guilty to two counts of second degree possession of a firearm for an unlawful purpose and one count of third degree unlawful possession of an antipersonnel bomb. The first offense carried a sentence of 5 to 10 years in prison, while the second offense carried a penalty range of 3 to 5 years in prison. New Jersey's hate crime statute allowed the sentencing judge to increase the sentence for a particular offense beyond the statutory maximum if the judge found, by a preponderance of the evidence, that the defendant, in committing the offense, acted with a purpose to intimidate an individual or group of individu-

als on the basis of, *inter alia*, race. *Apprendi*, 530 U.S. at 468-69, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351. The plea agreement permitted the State to request imposition of a higher sentence on the second degree offense on the ground that defendant had acted with a biased purpose, as described in the hate crime statute. Defendant reserved the right to challenge the hate crime sentence enhancement on constitutional grounds. Following an evidentiary hearing, the circuit court found, by a preponderance of the evidence, that defendant's crime was motivated by racial bias and that defendant's actions were taken with a purpose to intimidate. The circuit court rejected defendant's constitutional challenge to the hate crime statute and imposed a 12-year prison term on the second degree offense, a sentence equivalent to that permitted for commission of a first degree offense. This decision was upheld by the appellate division of the New Jersey superior court and affirmed by the New Jersey Supreme Court. *Apprendi*, 530 U.S. at 471-72, 147 L. Ed. 2d at 443-44, 120 S. Ct. at 2352-53.

The United States Supreme Court reversed, holding the sentence enhancement provisions of New Jersey's hate crime statute unconstitutional under the due process clause of the fourteenth amendment to the United States Constitution. U.S. Const., amend. XIV. *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 446, 120 S. Ct. at 2355. In doing so, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

In addition to *Apprendi*, the appellate court in the instant case relied on its decision in *People v. Clifton*, 321 Ill. App. 3d 707 (2000). There, the defendant was sentenced to consecutive prison terms of 55 years for

murder and 25 years for attempted murder. The consecutive sentences were imposed under section 5—8—4(a) of the Code. On appeal, defendant argued that this section is unconstitutional under the rationale of *Apprendi*, because the finding of severe bodily injury must be made by a jury and not the circuit court. The appellate court agreed, observing that it would be "anomalous" to hold that a statute that enhances a sentence based upon certain factors comes within the purview of *Apprendi*, while a statute that requires an extended period of imprisonment based upon the existence of certain factors does not. Section 5—8—4(a) of the Code, while not enhancing the sentence for any particular offense, has the effect of increasing the total amount of time a defendant will serve in prison. The practical effect of the application of section 5—8—4(a) is that a factual finding of severe bodily injury by a circuit court will increase the actual sentence which a defendant may receive for "a given course of conduct." *Clifton*, 321 Ill. App. 3d at 726. According to the *Clifton* court, this is precisely the type of result the *Apprendi* holding was intended to encompass. The court noted that the focus in *Apprendi* was on the effect of the statute, rather than its form.

The *Clifton* court also noted that the penalties for the defendant's "collective offenses" were increased when the circuit court made the finding of severe bodily injury. With that finding, consecutive sentences were mandated. The court concluded that the stigma and loss of liberty are greater where section 5—8—4(a) of the Code applies and it would be "unduly narrow and arbitrary" to hold that *Apprendi* does not apply to section 5—8—4(a) of the Code.

Our appellate court is divided on the question of whether *Apprendi* applies to consecutive sentences under section 5—8—4(a) of the Code. In addition to *Clifton*, other cases have held that section 5—8—4(a) of the Code

is unconstitutional under *Apprendi*. See, *e.g.*, *People v. Harden*, 318 Ill. App. 3d 425 (2000); *People v. Mason*, 318 Ill. App. 3d 314 (2000); *People v. Waldrup*, 317 Ill. App. 3d 288 (2000). Other cases have held that *Apprendi* does not apply to consecutive sentences. See, *e.g.*, *People v. Primm*, 319 Ill. App. 3d 411 (2000); *People v. Lucas*, 321 Ill. App. 3d 49 (2001); *People v. Hayes*, 319 Ill. App. 3d 810 (2001); *People v. Maiden*, 318 Ill. App. 3d 545 (2001).

In *Primm*, defendant was convicted of first degree murder, attempt (first degree murder), and aggravated battery with a firearm. *Primm*, 319 Ill. App. 3d at 414. The circuit court sentenced him to 50 years on the first degree murder conviction, but did not impose sentence on the attempt (first degree murder) conviction. *Primm*, 319 Ill. App. 3d at 414.

Defendant appealed and the State cross-appealed. In its cross-appeal, the State argued that the circuit court erred in failing to impose consecutive sentences under section 5—8—4(a) of the Code. Noting that this section requires imposition of consecutive sentences under the factors set forth therein, the appellate court found the factors to apply. It vacated the 50-year sentence and remanded for imposition of consecutive sentences for first degree murder and attempt (first degree murder). *Primm*, 319 Ill. App. 3d at 429. Defendant argued that section 5—8—4(a) is unconstitutional under *Apprendi*. *Primm*, 319 Ill. App. 3d at 427. The appellate court rejected this argument, noting that consecutive sentences determine only the manner in which the sentences for each individual offense will be served and do not increase the maximum sentence that may be imposed for each separate offense. The court followed its decision in *People v. Sutherland*, 317 Ill. App. 3d 1117, 1131 (2000), where it held that *Apprendi* does not apply to consecutive sentencing under section 5—8—4(a) of the Code. The appellate court also cited our decision in *Thomas v. Greer*,

143 Ill. 2d 271, 278 (1991) (*Primm*, 319 Ill. App. 3d at 428), where we stated that when consecutive sentences are imposed, a new single sentence is not formed under section 5—8—4(e) of the Code (730 ILCS 5/5—8—4(e) (West 1998)). While noting the opposite result reached in *Clifton*, the appellate court deemed itself bound by this court's *Thomas* decision. *Primm*, 319 Ill. App. 3d at 428.

In the instant case, the State argues that *Apprendi* does not apply to consecutive sentences, noting this court's previous statements that such sentences do not form a single sentence, but merely determine the manner in which a defendant will serve the sentences.

We first note that the question of whether a statute is constitutional is subject to *de novo* review. *People v. Malchow*, 193 Ill. 2d 413, 418 (2000). Statutes carry a strong presumption of constitutionality and the party asserting the unconstitutionality of a statute has the burden of rebutting this presumption. *People v. Maness*, 191 Ill. 2d 478, 483 (2000). "[I]t is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can reasonably be done, and, further, that if their construction is doubtful, the doubt will be resolved in favor of the validity of the law attacked." *Illinois Crime Investigating Comm'n v. Buccieri*, 36 Ill. 2d 556, 561 (1967).

*Apprendi* does not proscribe all judicial fact finding at sentencing, even though it may result in an increase in a defendant's punishment, provided the statutory maximum sentence for the offense is not exceeded. Indeed, the *Apprendi* Court recognized that judges have long exercised discretion in considering various factors relative to both the offense and the offender in imposing sentence within the range prescribed by statute. *Apprendi*, 530 U.S. at 481, 147 L. Ed. 2d at 449, 120 S. Ct. at 2358.

Section 5—5—3.2(a) of the Code (730 ILCS 5/5—5—

3.2(a) (West 1998)) identifies several aggravating factors that the circuit court may consider in imposing a more severe sentence on an offender. Some of these statutory factors involve a determination by the judge of the nature or seriousness of the defendant's conduct. Examples include where (1) the defendant's conduct caused or threatened serious harm (730 ILCS 5/5—5—3.2(a)(1) (West 1998)); (2) in committing certain delineated offenses when the victim was under the age of 18 years, the defendant held a position of trust or supervision, such as, *but not limited to*, family member, teacher, scout leader, baby-sitter, or day care worker (730 ILCS 5/5—5—3.2(a)(14) (West 1998)); and (3) the defendant committed an offense related to the activities of an organized gang (730 ILCS 5/5—5—3.2(a)(15) (West 1998)).

The fact-finding process implicated by these aggravating factors does not offend the constitutional protections identified in *Apprendi* because, in applying the factors, the judge may not impose a sentence that exceeds the prescribed statutory maximum for each offense. 730 ILCS 5/5—8—1(a) (West 1996). Thus, the defendant is not subjected to additional punishment not contemplated by the substantive offense statute or the sentencing statute associated therewith. The Supreme Court in *Apprendi* explicitly recognized the legitimacy of such judicial fact finding when it noted that "nothing in [the] history [of the common law] suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." (Emphasis in original.) *Apprendi*, 530 U.S. at 481, 147 L. Ed. 2d at 449, 120 S. Ct. at 2358.

The New Jersey sentencing scheme invalidated in *Apprendi* involved more than simple judicial fact finding. The fact determined by the sentencing judge in that case involved the defendant's intent or purpose in committing

the offense. The *Apprendi* Court noted that a defendant's intent in committing an offense "is perhaps as close as one might hope to come to a core criminal offense 'element.' " *Apprendi*, 530 U.S. at 493, 147 L. Ed. 2d at 457, 120 S. Ct. at 2364. The sentencing judge's fact finding resulted in the defendant's being sentenced to a longer prison term than allowed by the statute defendant was convicted of violating. A second degree offense was, in effect, transformed into a first degree offense. *Apprendi*, 530 U.S. at 491, 147 L. Ed. 2d at 455-56, 120 S. Ct. at 2363. Yet, the jury had convicted defendant of only the second degree offense. The Supreme Court characterized such judicial fact finding as " 'a tail which wags the dog of the substantive offense.' " *Apprendi*, 530 U.S. at 495, 147 L. Ed. 2d at 458, 120 S. Ct. at 2365, quoting *McMillan v. Pennsylvania*, 477 U.S. 79, 88, 91 L. Ed. 2d 67, 77, 106 S. Ct. 2411, 2417 (1986). The Court noted that when a defendant is subjected to additional punishment beyond that provided by statute where the offense was committed under certain specified circumstances, "it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened." *Apprendi*, 530 U.S. at 484, 147 L. Ed. 2d at 451, 120 S. Ct. at 2359.

The appellate court in this case rejected the State's argument that *Apprendi* only applies to facts that increase the penalty for an offense beyond the statutory maximum sentence. In doing so, the court relied on statements made by the Supreme Court in *Apprendi* that "[d]espite what appears to us the clear 'elemental' nature of the factor here, the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Apprendi*, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365. The appellate court read this passage to mean that it is the effect of the statute, not its form, that controls in any inquiry into

whether consecutive sentences increase a defendant's punishment. 317 Ill. App. 3d at 813.

However, reading the quoted statements in context makes clear that the *Apprendi* Court was referring to the "constitutionally novel and elusive distinction" (*Apprendi*, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365) between elements of an offense and sentencing factors. Thus, it is the *effect* of the particular fact to be decided by the judge on a defendant's punishment and not the label attached to the fact that controls in any inquiry under *Apprendi*. Nowhere in *Apprendi* did the Supreme Court state or imply that the determination of a fact that does not result in a defendant's being sentenced in excess of the statutory maximum must be decided by a jury.

This court has long held that consecutive sentences constitute separate sentences for each crime of which a defendant has been convicted. In *People v. Elliott*, 272 Ill. 592 (1916), we upheld the imposition of consecutive sentences of a fine and imprisonment for 70 separate convictions of unlawful sale of intoxicating liquor (*Elliott*, 272 Ill. at 600), finding the individual sentences not to be disproportionate to the nature of the offenses. We held that the Illinois constitutional provision requiring that all penalties shall be proportionate to the nature of the offense does not apply to the aggregate of the punishments inflicted for different offenses. We there stated:

> "The only reason that the fines aggregate a large sum and the imprisonment is for a long period is because there were so many violations of the law prosecuted under one indictment, but the punishment under each count must be considered by itself. The state may join misdemeanors of the same character in the same indictment and the court may fix separate punishment upon each count on which there is a conviction. [Citations.] This practice has been approved by this court rather than to require separate indictments for each offense. The constitutional provision does not apply in any manner to the aggregate of the

punishments inflicted for different offenses." *Elliott*, 272 Ill. at 600.

More recently, we held in *Thomas*, 143 Ill. 2d at 278-79, that when consecutive sentences are imposed, they do not form a single sentence for any purpose other than determining the manner in which the sentences are to be served for the purpose of determining an offender's eligibility for parole.

In *People v. Kilpatrick*, 167 Ill. 2d 439 (1995), the circuit court imposed consecutive sentences of nine and six years' imprisonment for two separate offenses. On defendant's motion to reconsider, in which he argued that consecutive sentences were not warranted, the circuit court vacated the sentences and imposed a single sentence of 15 years in prison on the two offenses. *Kilpatrick*, 167 Ill. 2d at 441. On appeal to this court, we noted that section 5—8—1(c) of the Code (730 ILCS 5/5—8—1(c) (West 1994)) prohibits circuit courts from increasing a sentence once it has been imposed. *Kilpatrick*, 167 Ill. 2d at 442. We held that, although the total number of years defendant would be incarcerated was unchanged, consecutive sentences are not treated as a single sentence. Thus, the circuit court's action effectively increased defendant's sentences for each offense to 15 years. *Kilpatrick*, 167 Ill. 2d at 446-47.

Our jurisprudence, therefore, makes it clear that consecutive sentences do not constitute a single sentence and cannot be combined as though they were one sentence for one offense. Each conviction results in a discrete sentence that must be treated individually. Though section 5—8—4(e) of the Code (730 ILCS 5/5—8—4(e) (West 1998)) instructs the Department of Corrections (Department) to treat consecutive sentences as a single sentence for purposes of determining the manner in which those sentences will be served, we held in *People v. Goffman*, 65 Ill. 2d 296, 302 (1976), that this provision is directed to the Department and not to the judiciary.

Defendant argues here that the proper inquiry is not whether consecutive sentences form a single discrete sentence, but rather whether consecutive sentences constitute increased punishment under the rationale of *Apprendi*. In support, defendant cites the *Apprendi* Court's concern with the heightened loss of liberty and heightened stigma attached to an offense where a defendant is subjected to increased punishment. However, the *Apprendi* Court's concern was limited to situations in which a defendant is sentenced to a punishment that exceeds the statutory maximum sentence. *Apprendi*, 530 U.S. at 484, 147 L. Ed. 2d at 451, 120 S. Ct at 2359. It is not the increased punishment itself that triggers the constitutional protections of *Apprendi*; rather, the fact must be submitted to a jury and proved beyond a reasonable doubt only when the punishment exceeds the statutory maximum for the particular offense. A holding that the mere fact of increased punishment implicates *Apprendi* would place in jeopardy the use by judges of aggravating factors to increase a defendant's sentence beyond the statutory minimum, even though the punishment does not exceed the maximum permissible for the offense. The holding of *Apprendi* clearly does not extend to this situation.

We also reject defendant's argument that consecutive sentences must now, under *Apprendi*, be treated as a single sentence. We are unwilling to cast aside established case law holding that each consecutive sentence constitutes a distinct sentence for one particular offense and that consecutive sentences may not be lumped together as one. Nothing in *Apprendi* mandates such a result. While, undeniably, a defendant who receives consecutive sentences will serve a longer period of imprisonment than a defendant who receives identical concurrent sentences, this fact alone does not make *Apprendi* applicable. The application by a judge of the factors identified in sec-

tion 5—8—4(a) of the Code determines only the manner in which a defendant will serve his sentences for multiple offenses. The defendant is not exposed to punishment beyond that authorized by the jury's verdict, provided that the sentence for each separate offense does not exceed the maximum permitted by statute for that offense.

Defendant contends that our decisions in *Kilpatrick* and *People v. Jones*, 168 Ill. 2d 367 (1995), support, rather than refute, his argument that imposition of consecutive sentences can result in an unlawful increase in sentence. He asserts that, in these cases, we did not decide that imposition of consecutive sentences could never be interpreted to constitute an increase in penalty. Defendant notes that, in reaching our decision in *Kilpatrick* that defendant's new 15-year sentence circumvented the language of section 5—8—4(c) of the Code, we discussed *People v. Muellner*, 70 Ill. App. 3d 671 (1979). *Kilpatrick*, 167 Ill. 2d at 444. In *Muellner*, defendant was convicted of two counts of rape and two counts of deviate sexual assault. The circuit court sentenced him to concurrent terms of four to eight years in prison. However, several days later, the circuit court ordered that the sentences for the rape convictions be served consecutively to the sentences for the deviate sexual assault convictions. *Muellner*, 70 Ill. App. 3d at 673. The appellate court rejected the State's argument that the circuit court did not increase defendant's sentence, but merely modified it. The court held that the resentencing to consecutive terms was, for practical purposes, an increase in the length of defendant's sentence, because his earliest possible parole release would thereby be delayed to a later point in time. *Muellner*, 70 Ill. App. 3d at 683.

The statement by the *Muellner* court that an order imposing consecutive sentences on resentencing constituted an increase in the length of defendant's sentence

was *dictum*, as such an order was not at issue in *Kilpatrick*. The citation to *Muellner* served only to illustrate the conflict among the districts of the appellate court on the issue addressed in *Kilpatrick*.

Of more significance is *Kilpatrick*'s citation with approval of the appellate court's decision in *People v. Rivera*, 212 Ill. App. 3d 519 (1991). There, on resentencing after defendant violated his probation, the circuit court divided defendant's six burglary convictions into three groups and imposed concurrent terms of four years' imprisonment on each conviction in each group. The court also imposed a four-year prison term for an escape conviction. The four-year terms on each group of burglary convictions were to run consecutively, as was the prison term on the escape conviction, for a total of 16 years' imprisonment. Upon a motion for reconsideration, the circuit court divided the burglary convictions into two groups and imposed concurrent terms of six years' imprisonment for each conviction in each group. The four-year term for the escape conviction remained. All three groups of sentences were to run consecutively to one another for a total of 16 years' imprisonment. *Rivera*, 212 Ill. App. 3d at 520-21. The appellate court noted that, although the total number of years for all sentences remained unchanged, the sentences in each consecutive group did not constitute one sentence. The fact that the total number of years for all convictions remained the same due to their consecutive nature does not alter the fact that each individual sentence within the groups was increased. Thus, the circuit court impermissibly increased defendant's sentences under section 5—8—4(c) of the Code. *Rivera*, 212 Ill. App. 3d at 525.

Similarly, in *Jones*, the defendant was sentenced to consecutive prison terms of 25 years on two felonies. Upon defendant's motion to reconsider the sentences, the circuit court determined that it had neglected to

admonish defendant of the possibility of consecutive sentences. The court vacated the sentences and resentenced defendant to a single term of 30 years on one of the felony convictions. On appeal, defendant argued that the circuit court was not authorized to increase the term of imprisonment from 25 years to 30 years. The appellate court affirmed the circuit court's decision. *Jones*, 168 Ill. 2d at 370. Relying on *Kilpatrick*, we held that the imposition of the 30-year sentence constituted an impermissible increase in defendant's sentence, even though the total amount of prison time was decreased. *Jones*, 168 Ill. 2d at 371-72. While it is true that in neither *Kilpatrick* nor *Jones* did we decide that consecutive sentences can never constitute an increased penalty, this fact does not assist defendant. In those cases, we were concerned with the "improper chilling effect" that an increased sentence for a particular offense would have on a defendant's decision to challenge a consecutive sentence. *Kilpatrick*, 167 Ill. 2d at 447.

Defendant further argues that section 5—8—4(a) of the Code does more than lengthen the time of a defendant's imprisonment. In addition, he says, it extends the maximum penalties to which a defendant can be exposed for a given course of conduct by controlling whether the defendant will serve his sentences concurrently or consecutively. However, *Apprendi*, as defendant notes, applies only where a legislature removes from the jury the assessment of facts that increase the " 'prescribed range of penalties to which a criminal defendant is exposed.' " *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2363, quoting *Jones v. United States*, 526 U.S. 227, 252-53, 143 L. Ed. 2d 311, 332, 119 S. Ct. 1215, 1228 (1999) (Stevens, J., concurring). The prescribed range of penalties is that set forth in the statute defining each separate offense of which a defendant has been convicted or the associated sentencing statute. Consecu-

tive sentences, taken together, do not constitute a "range of penalties" to which *Apprendi* applies.

In *McMillan*, the Supreme Court considered a challenge to Pennsylvania's mandatory minimum sentencing statute. Pursuant to this statute, a person convicted of certain felonies was subject to a mandatory minimum sentence of five years' imprisonment if the sentencing judge found, by a preponderance of the evidence, that the person visibly possessed a firearm during commission of the offense. *McMillan*, 477 U.S. at 80-81, 91 L. Ed. 2d at 73, 106 S. Ct. at 2413. Defendant was convicted of aggravated assault. The State gave notice of its intent to invoke the statute. However, the circuit court found the statute to be unconstitutional. *McMillan*, 477 U.S. at 82, 91 L. Ed. 2d at 73-74, 106 S. Ct. at 2414. The state's highest court found the statute constitutional. *McMillan*, 477 U.S. at 83, 91 L. Ed. 2d at 74, 106 S. Ct. at 2414. The Supreme Court agreed, noting, as to defendant's complaint that the statute increased the punishment for the offense, that the statute "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm." *McMillan*, 477 U.S. at 87-88, 91 L. Ed. 2d at 77, 106 S. Ct. at 2417.

Defendant asserts that section 5—8—4(a) of the Code is not subject to the "limited holding" of *McMillan* because the Supreme Court emphasized there that the statute did not expose the defendant to greater or additional punishment. Defendant insists that section 5—8—4(a) of the Code does indeed expose a defendant to greater punishment by altering the maximum penalty available by requiring consecutive sentences. However, *McMillan*, as well as *Apprendi*, spoke in terms of expos-

ing a defendant to a greater punishment than that authorized for the particular offense. Consecutive sentences do not expose a defendant to punishment exceeding the statutory maximum for each conviction.

On a final note, the State has filed a motion for leave to cite additional authority, citing two very recent cases that it believes are relevant to our inquiry here. We now allow this motion. The cases are *Buford v. United States*, 532 U.S. ___, 149 L. Ed. 2d 197, 121 S. Ct. 1276 (2001), and *United States v. White*, 240 F.3d 127 (2d Cir. 2001). We have reviewed these cases and, because they do not add to our analysis of the instant case, we will not comment on them.

## CONCLUSION

In summary, we hold that consecutive sentences imposed under section 5—8—4(a) of the Code do not violate the due process rights of defendants and that the Supreme Court's *Apprendi* decision does not apply to such sentences. We therefore reverse the decision of the appellate court and affirm the circuit court as to this issue. We remand this cause to the appellate court for consideration of other issues raised there by defendant and not addressed by that court.

> *Appellate court reversed,*
> *circuit court affirmed in part;*
> *cause remanded.*