THIRD DIVISION

July 16, 2003 

No. 1-99-2623

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the 

)   Circuit Court of 

Plaintiff-Appellee, )   Cook County.

)

v. ) 

)

DONALD LUCAS, ) Honorable

) Stuart E. Palmer,

Defendant-Appellant. ) Judge Presiding.

Modified Upon Denial of Rehearing

JUSTICE WOLFSON delivered the opinion of the court:

Once again we are called on to determine the authority of a trial judge to impose lengthy prison sentences.
(footnote: 1)
 The defendant, Donald Lucas, was charged with committing a vicious sexual assault on a female victim.  There was a bench trial.  The judge found the defendant guilty of attempted first degree murder, aggravated criminal sexual assault, and aggravated kidnapping.  The trial court, using extended-term and consecutive-sentence statutes, sentenced the defendant to a total of 120 years.

On appeal, the defendant relies on 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  He contends the statutes authorizing the trial court to impose extended term and consecutive sentences are unconstitutional.  See 730 ILCS 5/5-5-3.2(b)(2) (West 1998), and 730 ILCS 5/5-8-4(a) (West 1998).

We find 
Apprendi
's grasp does not reach consecutive sentences.  And we affirm the defendant's extended-term sentences based on the Supreme Court's decision in 
People v. Crespo
, 203 Ill. 2d 335, 788 N.E.2d 1117 (2003).   

FACTS

On June 27, 1998, the victim was at the corner of 22nd and State streets in Chicago, trying to buy drugs from the defendant.  She told the defendant she had only four or five dollars.  The defendant said if she gave him the money, he would let her smoke drugs with him.  She agreed, and they walked to a secluded wooded area at 22nd and Wabash.

When they reached the wooded area, the defendant grabbed the victim by her throat and started choking her.  She tried to fight back, but he started punching her face.  The defendant punched her in the face several times, causing her to fall to the ground unconscious.

When the victim regained consciousness, she was lying on the ground, her bare back on broken glass.  The defendant had removed all of her clothes and was on top of her.  While the defendant was sexually assaulting her, he called her "black bitch" and told her to "be still."  The defendant told her he was going to kill her.

The victim was unable to move.  The defendant, realizing his victim was conscious, continued to punch her in the face, beating her unconscious again.  When the victim regained consciousness, the defendant was still on top of her, sexually assaulting her.  Seeing the victim awake, the defendant punched her in the face again, causing her to lose consciousness again.  

The victim then awoke to a very sharp pain in her vagina.  At the time, the defendant was still on top of her.  She passed out for a moment and awoke again to the very sharp pain.  She did not know what caused the sharp pain, but this time she saw the defendant standing between her legs pushing something into her vagina.

While the defendant stood above her, pushing an object into her vagina, he said "be still, you bitch."  The victim, unable to move, passed out again.  When she awoke, the defendant was gone, but she could not move.  She could feel something was still inside her vagina.

Evidence at trial showed the defendant used a tree limb, approximately 30 inches long and approximately 2 inches in diameter, to impale the victim's vagina.  She suffered multiple blunt head trauma, conjunctival hemorrhages, an open wound to her vagina, and laceration to her iliac vein -- the second largest vein in the body. 

The parties stipulated that if Doctor John Barrett were called to testify, he would have testified he was one of the emergency room doctors who treated the victim on June 27, 1998.  According to Doctor Barrett, in the 24 years he worked in the emergency room of Cook County Hospital, the defendant's attack on the victim was "the most significant impalement [I have] seen performed by another human being." 

After a hearing in aggravation and mitigation, the trial judge imposed the following sentences:

(1) Attempted first degree murder -- an extended term of 50 years;

(2) Aggravated criminal sexual assault -- an extended term of 50 years;

(3) Aggravated kidnapping –- a term of 20 years.

The sentences were to run consecutively, adding up to a 120-year term.

The two extended sentences were based on the trial court's finding that the crimes were accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty.  See 730 ILCS 5/5-5-3.2(b)(2) (West 1998).  Each sentence was to run consecutive to the other, the trial court finding "these were all conducted as part of the same course of conduct."  See 730 ILCS 5/5-8-4(a) (West 1998).

DECISION 

EXTENDED-TERM SENTENCES

The defendant was convicted of three Class X felonies: attempted first degree murder, aggravated criminal sexual assault, and aggravated kidnapping.  Ordinarily, these felonies carry a term of 6 to 30 years imprisonment (730 ILCS 5/5-8-1(a)(3) (West 1998)), but an offender may be sentenced to 30 to 60 years imprisonment if the trial court finds a statutory aggravating factor that subjects the defendant to an extended-term sentence under section 5-8-2 of the Unified Code of Corrections (730 ILCS 5/5-8-2(a)(2) (West 1998)).  

Here, the trial court sentenced the defendant to an extended term of 50 years imprisonment for attempted first degree murder and to an extended term of 50 years imprisonment for aggravated criminal sexual assault based on the court's own post-trial finding that the crimes were exceptionally brutal and heinous (730 ILCS 5/5-5-3.2(b)(2) (West 1998)).  The defendant contends his extended-term sentences must be vacated in light of 
Apprendi
, in which the United States Supreme Court held any fact, other than a prior conviction, that increases the maximum penalty for a crime must be submitted to a fact-finder and proved beyond a reasonable doubt.  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 447, 120 S. Ct. at 2354. 

The question of whether the crimes were committed in a brutal and heinous manner was not submitted to a fact-finder for proof beyond a reasonable doubt as required by 
Apprendi
.  The imposition of extended-term sentences based on this aggravating factor was error.    

The State contends the defendant forfeited our review of this issue because he failed to raise the issue before the trial court.  See 
People v. Reed
, 177 Ill. 2d 389, 393-94, 686 N.E.2d 584 (1997) (defendant must raise sentencing issues in post-sentencing motion to preserve issues for review).   The State says, under 
Crespo
, any error made in imposing the extended-term sentences in this case is not 
plain
 error because the defendant cannot show prejudice, and the sentences must be affirmed.  We agree.

In 
Crespo
, a jury found the defendant guilty of first degree murder, as well as other crimes.  
Crespo
, 203 Ill. 2d at 337.  For the murder conviction, the defendant was sentenced to an extended term of 75-years' imprisonment.  
Crespo
, 203 Ill. 2d at 337.  The extended-term sentence was based on the court's post-trial finding that the murder was committed in a brutal and heinous manner, indicative of wanton cruelty.  
Crespo
, 203 Ill. 2d at 346, citing 730 ILCS 5/5-5-3.2(b)(2) (West 1994).    

In the court's original opinion, it did not address any sentencing issues.  In his petition for rehearing, the defendant challenged his 75-year extended-term sentence based on 
Apprendi
.  
Crespo
, 203 Ill. 2d at 346.  He contended his sentence was based on a finding that should have been submitted to a finder of fact and proved beyond a reasonable doubt.  Although the State conceded error, it contended the error was harmless.

In a supplemental opinion, the Supreme Court said the proper analysis in that case was whether the 
Apprendi
 violation was plain error because the defendant failed to object at the trial.  
Crespo
, 203 Ill. 2d at 346.  The court said that for the plain error doctrine to apply, (1) error must exist, (2) the error must be "plain," and (3) the error must affect the defendant's substantial rights.  
Crespo
, 203 Ill. 2d at 348, citing 
United States v. Cotton
, 535 U.S. 625, 631, 152 L. Ed. 2d 860, 868, 122 S. Ct. 1781, 1785 (2002).  Even then, the appellate court may exercise its discretion to address a forfeited error only where the error " 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' "  
Crespo
, 203 Ill. 2d at 348, quoting 
Cotton
, 535 U.S. at 631, 152 L. Ed. 2d at 868, 122 S. Ct. at 1785 (internal quotations omitted).   Under the plain error analysis, the sentence should be affirmed unless the defendant showed the error was prejudicial.  
Crespo
, 203 Ill. 2d at 347-48.  

Applying the plain error analysis to the facts before it, the Supreme Court said there was overwhelming evidence the crime was committed in a brutal and heinous manner.  The evidence showed the victim suffered 24 stab wounds to various parts of her body.  The defendant stabbed her with such force that the knife blade was bent at a 90-degree angle.  The defendant also pulled her hair with sufficient force to rip out a large clump of hair with scalp attached.  Given the evidence, the court concluded "no basis [existed] for concluding that the 
Apprendi
 violation 'seriously affected the fairness, integrity or public reputation of judicial proceedings.' "  Because the defendant failed to show the error was prejudicial, the Supreme Court left his 75-year extended-term sentence untouched.  
Crespo
, 203 Ill. 2d at 349.

Here, the evidence presented to the trial court overwhelmingly supported a finding that the crime was committed in a brutal and heinous manner, indicative of wanton cruelty.  The defendant's use of the tree branch in committing his acts of sexual misconduct was particularly horrific.  The amount of force he used in impaling the victim's vagina with the branch caused her devastating injuries.  He repeatedly beat her into an unconscious state and left her with the branch still in her body. We are convinced, as was the court in 
Crespo
, that if these facts were submitted to a jury, the jury would have found these crimes were committed in a brutal and heinous manner, indicative of wanton cruelty.  Defendant has failed to show the sentencing error was prejudicial.  

CONSECUTIVE SENTENCES

The defendant also contends section 5-8-4(a) of the Unified Code of Corrections (730 ILCS 5/5-8-4(a) (West 1998)) is unconstitutional.  Section 5-8-4(a) provides, in relevant part:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, *** the defendant was convicted of a violation of Section 12-13 [criminal sexual assault] or 12-14 [aggravated criminal sexual assault] of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively."  730 ILCS 5/5-8-4(a) (West 1998).

The trial court sentenced the defendant pursuant to this section and ordered all three terms to run consecutively.  Relying on 
Apprendi
, the defendant contends section 5-8-4(a) is unconstitutional because it allows a trial court to make factual findings -- such as the finding in this case that the offenses of attempted first degree murder, aggravated criminal sexual assault, and aggravated kidnapping were committed as part of a single course of conduct -- that increase the permissible range of penalties by requiring the defendant's sentences to run consecutively.

The State asserts 
Apprendi
 does not apply to section 5-8-4(a) of the Unified Code of Corrections because that section does not authorize the imposition of a sentence which is beyond the prescribed statutory maximum for any particular offense.  Rather, the State contends, an order that multiple sentences run consecutively pursuant to section 5-8-4(a) affects only the manner in which the sentences will be served, not the length of those sentences. 

The Supreme Court has held 
Apprendi
 does not apply to consecutive sentences.  
People v. Carney
, 196 Ill. 2d 518, 536, 752 N.E.2d 1137 (2001); 
People v. Wagener
, 196 Ill. 2d 269, 286, 752 N.E.2d 430 (2001).  In 
Carney
, the defendant was convicted and sentenced to consecutive terms of 29 years' imprisonment for murder and 10 years' imprisonment for armed robbery.  
Carney
, 196 Ill. 2d at 520.  The court held that "consecutive sentences do not constitute a single sentence and cannot be combined as though there were one sentence for each offense.  Each conviction results in a discrete sentence that must be treated individually."  
Carney
, 196 Ill. 2d at 530.  

Here, 
none of defendant's separate sentences exceeds the maximum sentence for each offense.  We, therefore, reject defendant's argument that consecutive sentences imposed pursuant to section 5-8-4(a) of the Code are unconstitutional under 
Apprendi
. 
 
People v. Kelley
, 331 Ill. App. 3d 253, 258, 770 N.E.2d 1130 (2002). 

CONCLUSION

For the foregoing reasons, the order of the circuit court is affirmed.

Affirmed.

BURKE, and HOFFMAN, JJ., concur.

FOOTNOTES
1:
On February 5, 2003, the Supreme Court directed us to vacate our judgment in this case entered on March 21, 2001, and to reconsider our decision in light of 
People v. Swift
, 202 Ill. 2d 378, 781 N.E.2d 292 (2002), where the court held that any factual finding which increases a sentence above the statutory sentencing range must be proven to a jury beyond a reasonable doubt.  
People v. Lucas
, No. 91399 (Ill. February 5, 2003).  We did so and refiled our opinion with modifications.  
People v. Lucas
, No. 1-99-2623 (Ill. App. March 26, 2003).  Just five days later, our Supreme Court issued a supplemental opinion to 
People v. Crespo
, 203 Ill. 2d 335, 788 N.E.2d 1117 (2002), in which the court employed a plain-error analysis in rejecting the defendant's 
Apprendi
-based challenge to his extended-term sentence.  At the time, this case was still before us on the State's petition for rehearing.  After receiving arguments from the parties on the impact of 
Crespo
 on this case, we vacate our March 26, 2003, opinion and modify our decision to affirm defendant's sentences consistent with the Supreme Court's decision in 
Crespo
.