**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 190533-U

Order filed May 11, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| TRUDY LAFEVER, Individually, and as Special Administrator of the Estate of Steven LaFever, Deceased, | ) ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois. |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-19-0533 Circuit No. 15-L-32 |
| v. | ) ) | |
| FORD MOTOR COMPANY, | ) ) | The Honorable Mark A. VandeWiele, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON[1] delivered the judgment of the court.
Justices McDade and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    In an appeal in an asbestos products liability case, the appellate court held that the trial court did not abuse its discretion in granting plaintiff's motion for new trial based upon defendant's violation of a pretrial motion *in limine* and misrepresentation of certain key facts to the jury. The appellate court, therefore, affirmed the trial court's judgment.

_____

[1] This case was administratively reassigned to Justice Peterson for authorship on December 19, 2022. Justice Peterson has read the briefs and listened to the recording of the oral argument.

¶ 2        Plaintiff, Trudy LaFever, individually and as the special administrator of her deceased husband's estate, brought an asbestos products liability action against defendant, Ford Motor Company, and several other product manufacturers, relating to the injury and death of her husband, Steven LaFever.[2] Following a trial, the jury returned a verdict for defendant and against plaintiff. Plaintiff filed a motion for new trial, which the trial court subsequently granted. Defendant sought leave from this court to file an interlocutory appeal to challenge the trial court's ruling. See Ill. S. Ct. R. 306(a)(1) (eff. Oct. 1, 2019) (allowing for a permissive appeal in a civil case where the trial court has granted a new trial). We initially denied defendant's request but later allowed it after being directed to do so by the supreme court in a supervisory order. See *LaFever v. Ford Motor Co.*, 147 N.E.3d 676 (2020). Upon conducting our review of this case, we affirm the trial court's judgment, granting plaintiff's motion for new trial.

¶ 3                                    I. BACKGROUND

¶ 4        In January 2014, plaintiff's husband, Steven LaFever, was diagnosed with peritoneal mesothelioma, a cancer of the lining of the abdomen. He died from that condition a few months later. The following year, in March 2015, plaintiff brought the instant products liability action against defendant and several other product manufacturers, alleging that Steven's injury and subsequent death were caused by his exposure to asbestos contained in products that were manufactured by defendant and the other product manufacturers. More specifically, as to the current defendant, plaintiff's claim pertained to replacement brakes that were sold under the Ford brand name. Plaintiff's theory of the case was that defendant had negligently failed to provide adequate warnings on its product boxes for replacement brakes about brake dust that contained

_____

[2] In the record on appeal, plaintiff and decedent's last name is spelled both as "Lafever" and as "LaFever." For the purpose of consistency, we will spell plaintiff and decedent's last name as "LaFever" to match the spelling that was used in the supreme court's supervisory order on this case.

asbestos, even though defendant was aware of the danger with that product and had warned its own employees and its dealers' employees to take certain precautions (not to blow the dust off of the brakes with a compressor and to use a vacuum with a special filter when cleaning up the dust) when working with that product.

¶ 5        Defendant filed its answer and denied that the brake dust from its replacement brakes caused Steven's cancer and also denied that it had breached any duty to warn of a possible danger.

¶ 6        In April 2018, defendant filed a motion requesting that the trial court enter several orders *in limine*. Defendant's request No. 29 in that motion pertained to the disclosure of witnesses and documents. More specifically, in its request No. 29(c), defendant requested "[t]hat each party designate documents forty-eight (48) hours prior to seeking to admit the documents into evidence or to elicit testimony from a witness concerning the documents, with the exception of documents used for impeachment purposes or for demonstrative purposes."

¶ 7        Later that same month, a final pretrial conference was held in this case. During that conference, as the trial court and the parties' attorneys were discussing procedural matters, defendant's attorney spoke up on the record and sought an agreement from plaintiff's attorney regarding pre-disclosure (giving advance notice) of witnesses and exhibits, similar to what had been requested in defendant's motion *in limine* request No. 29.[3] Plaintiff's attorney indicated that he was opposed to a 48-hour pre-disclosure rule and proposed, instead, that each side give prior-afternoon notice (in the afternoon in court) of the witnesses and exhibits that the party intended to use in direct examination the following day and morning-of notice (at or before the case

_____

[3] Both sides had multiple attorneys in this case. For the sake of simplicity, we will refer to each sides' attorneys as "plaintiff's attorney" or "defendant's attorney" without any further distinction.

3

resumed in court in the morning) of the exhibits that the party anticipated using in cross-examination that day. After further discussion, both sides agreed to that proposal. The written order that was later entered, however, merely indicated that defendant's request No. 29 (and the other remaining requests in defendant's general motion *in limine*) was "PASSED."

¶ 8 Toward the end of April and into the early part of May 2018, a jury trial was held in this case. The trial took approximately two weeks to complete. In plaintiff's case-in-chief, one of the witnesses who was called to testify was the decedent's son, Brandon LaFever. During cross-examination, Brandon testified that when he was in high school, he helped his dad, Steven (the decedent), do work on the farm, such as replacing the brakes on trucks, tractors, and other vehicles. According to Brandon, when Steven was replacing the brakes, Steven would not rough up, sand, or grind the brakes or use an air compressor to blow off the brakes. Although Steven used Ford replacement brakes on a few occasions that Brandon remembered, Steven also used Bendix brand replacement brakes, including on the family's Ford vehicles and tractors.

¶ 9 When defendant's attorney asked Brandon if he had actually handled the Bendix brake boxes, Brandon responded that he had, but that he did not remember what the boxes looked like. Defendant's attorney attempted to show Brandon an undisclosed (no pre-disclosure had been given) photograph of a Bendix brake box. Plaintiff's attorney objected because he was not given pre-disclosure of the photograph. Defendant's attorney represented to the trial court that he was only seeking to refresh Brandon's recollection. Plaintiff's attorney asked to approach, and a sidebar conference was held.

¶ 10 During the sidebar conference, plaintiff's attorney noted that the parties had a rule for pre-disclosure of exhibits and that it was a rule that defendant's attorney had sought. Defendant's attorney commented that he understood what the rule was and that he was only trying to refresh

Brandon's recollection so that he could ask Brandon some questions about the Bendix boxes. Plaintiff's attorney reiterated to the trial court that defendant's attorney had not provided pre-disclosure of the photograph. Defendant's attorney responded, "As it relates to trying to refresh his recollection, if I disclose it then they would have shown it to him before and I don't know that I would have had a truthful answer or not. So it's not really impeachment, but it's kind of like that." The trial court ruled that defendant's attorney could show the photograph of the Bendix box to Brandon, but that the photograph would not be admitted into evidence and would not be shown on the overhead screen or anywhere else where the jury could see it.

¶ 11    When Brandon's cross-examination resumed, defendant's attorney showed the photograph to Brandon, but Brandon still did not remember what the Bendix replacement brake boxes looked like. Defendant's attorney attempted to show Brandon a second photograph of a Bendix brake box, and plaintiff's attorney again objected based upon the lack of pre-disclosure of the photograph. Unlike the first photograph, in the second photograph, the following warnings could be seen on the side of the Bendix box:

> ## "CAUTION
> CONTAINS ASBESTOS FIBERS
> AVOID CREATING DUST
> BREATHING ASBESTOS DUST MAY
> CAUSE SERIOUS BODILY HARM[.]"

After some brief discussion between the attorneys, plaintiff's attorney told the trial court that the attorneys did not need to approach on the second photograph.

¶ 12    Brandon's cross-examination resumed, and defendant's attorney showed Brandon the second photograph. The following questions and answers ensued:

5

"Q. And looking at that box, does that refresh your recollection about any warnings that may have been on Bendix boxes that you handled when you were helping your dad do brake jobs?

A. I don't remember anything like that on the box.

Q. Okay.

A. My job was to open the box usually and hand him [Steven] the brakes.

Q. And do it quickly; right?

A. Yep.

Q. I understand. So as you sit here today, you don't remember there being any warnings on the brake box about asbestos?

A. No.

Q. The Exhibit CS158, the first one that I showed you, that doesn't refresh your recollection about the color scheme on the boxes?

A. No.

Q. Or that there were logos, Bendix logos on the boxes?

A. No.

Q. Is it possible that there were asbestos warnings on the Bendix brake boxes that you handled, but you just don't recall them or you didn't read them?

[PLAINTIFF'S ATTORNEY]: Judge, I'll object to form on that possible, I mean.

THE COURT: I couldn't hear.

[PLAINTIFF'S ATTORNEY]: I object to form on that possible. Is he asking him to speculate?

THE COURT: I'll sustain the objection as speculation. Re[-]ask it.

BY [DEFENDANT'S ATTORNEY]:

Q. Do you recall seeing any warnings on the Bendix brake boxes having to do with asbestos?

A. No.

Q. And not to use compressed air?

A. No.

Q. Not to blow off brakes?

A. No."

¶ 13     When the questioning of Brandon had concluded and the jury was not present in the courtroom, plaintiff's attorney raised concerns to the trial court over defendant's attorney's use of the photographs and the questions that were asked. Plaintiff's attorney argued that in using the two photographs, defendant's attorney had violated the parties' agreement and the trial court's order *in limine* about pre-disclosure of exhibits. In addition, plaintiff's attorney also asserted that through the questions posed, defendant's attorney had intentionally misrepresented what the warnings on the Bendix boxes stated to give the jury a false impression that the warnings that plaintiff believed should have been given were provided to the decedent through the Bendix boxes, even if they had not been provided to the decedent through defendant's own products. Plaintiff's attorney asked the trial court to either grant a mistrial or to instruct the jury to disregard the defendant's attorney's comments that suggested there were warnings on the Bendix boxes about not blowing out the brakes or using compressed air.

7

¶ 14     Defendant's attorney opposed plaintiff's request and indicated to the trial court that he had prepared the photographs in advance to be used to refresh Brandon's recollection in case Brandon could not remember what the Bendix boxes looked like. Defendant's attorney pointed out that he had only shown the photographs to Brandon, and not to the jury, and that his efforts to refresh Brandon's recollection were not successful. Defendant's attorney commented that, had he not shown the photographs to Brandon, the questions that he had asked about the warnings on the boxes would have been "perfectly valid." In making that comment, defendant's attorney noted that the warnings on the Bendix boxes said to avoid creating dust and that there had been testimony "all over this trial" that the way to avoid breathing the brake dust was to not blow off the brakes. Defendant's attorney maintained, therefore, that he had not violated the trial court's order *in limine*.

¶ 15     After viewing the two photographs and listening to the arguments of the attorneys, the trial court decided to reserve ruling on plaintiff's attorney's motion for a mistrial and to give the jury a cautionary instruction instead. When asked by defendant's attorney what the cautionary instruction would state, the trial court indicated that it was going to remind the jury that what the attorneys said during the trial was not to be considered as evidence and that it was also going to tell the jury that it was not to consider the references that were made regarding what language may or may not have been on the Bendix brake box. Plaintiff's attorney commented that he understood that the trial court was taking his first request—the request for a mistrial—under advisement. Plaintiff's attorney then asked the trial court to instruct the jury that it could not consider the references that defendant's attorney had made about the warnings on the Bendix boxes and that the jury was to disregard any suggestion that there was a warning label that said anything similar to what defendant's attorney had implied. The trial court asked plaintiff's

attorney if he was moving for admission of the photographs so that he could publish the photographs to the jury (presumably, so the jury could see what the warnings on the Bendix boxes actually stated), but plaintiff's attorney declined, stating that doing so would only compound defendant's attorney's error.

¶ 16       When the jury was brought back into the courtroom, the trial court gave the jury the following cautionary instruction:

> "I need to remind you that what attorneys say is not to be considered as evidence. You may have heard some testimony concerning what warning was or was not on a box. You're not to consider that. That came from the attorney. You're not to consider that as evidence. You should disregard that statement."

¶ 17       As the jury trial progressed, the trial court never ruled upon plaintiff's attorney's motion for a mistrial. At the conclusion of the trial, the jury returned a verdict for defendant and against plaintiff. As part of the verdict, the jury also answered "yes" to a special interrogatory that asked, "was the sole proximate cause of Steven LaFever's injury and death something other than the conduct of defendant?"

¶ 18       In September 2018, after the time period for filing posttrial motions had been extended by the trial court, plaintiff filed a motion requesting that the trial court "declare a mistrial or order a new trial in this case" (referred to hereinafter at times as the motion for new trial). In the motion, plaintiff raised numerous claims of error, including the matter regarding the photographs and the questions asked of Brandon in cross-examination (collectively referred to hereinafter at times as the photograph matter). Defendant filed a response and opposed the motion for new trial. In its response, defendant asserted that the motion for new trial should be denied because defendant was properly attempting to refresh Brandon's recollection when the photograph matter

occurred and because plaintiff could not show that it was prejudiced by defendant's efforts in that regard. Plaintiff filed a reply and disputed defendant's assertions. Plaintiff asserted further in her reply that defendant's conduct was intentional and that the cautionary instruction that the trial court gave was insufficient to cure the error that had occurred.

¶ 19      In August 2019, the trial court held a hearing on plaintiff's motion for new trial. At the outset of the hearing, the trial court directed the parties to limit their arguments to the photograph matter, stating that if the trial court "should have granted a new trial at that point, then [it] should grant a new trial now." The trial court noted that it was "deeply troubled" when the photograph matter occurred and that its thought at that time was to let the matter play out because the matter could have ended up being a non-issue.

¶ 20      After listening to the oral arguments of the attorneys, the trial court granted plaintiff's motion for new trial. In so doing, the trial court stated:

> "I was really troubled by the situation. My inclination at the time was to grant the mistrial at that point, but we were so heavily invested in it I wanted it to play out, thinking it would cure itself. It didn't. I'm going to grant a new trial.
>
> It—and let me further elaborate. When I enter motions *in limine*, it sets the grounds [*sic*] rules with which we're all going to play by, both sides are going to play about. When those rules are violated, they have to have teeth. And in this case, it was a pretty egregious violation, in that the agreement was exchange those exhibits. It put the plaintiffs [*sic*] at a huge tactical disadvantage not having that. And the situation might have played out differently if they [*sic*] had. And it could have easily been remedied with a side bar prior to that being utilized. It was not. It was an egregious violation of the order that everybody had agreed to. And—and

10

in my mind, it had the potential to impact the outcome of the trial. And therefore it was—I should have granted the mistrial at the time. I'm correcting that error at this time and I'm going to order a new trial."

¶ 21     Defendant sought leave from this court to file an interlocutory appeal (see Ill. S. Ct. R. 306(a)(1) (eff. Oct. 1, 2019) (allowing for a permissive appeal from a trial court's grant of a new trial in a civil case)), and its request, although initially denied, was eventually granted. See *LaFever*, 147 N.E.3d 676 (directing this court in a supervisory order to allow defendant's appeal).

¶ 22                                                II. ANALYSIS

¶ 23     On appeal, defendant argues that the trial court erred in granting plaintiff's motion for new trial. Defendant asserts that in granting the motion, the trial court committed an abuse of discretion in the following four ways: (1) by disregarding that plaintiff's claim of error was waived because plaintiff had received the relief she had requested (plaintiff had requested a mistrial or a curative instruction, and the trial court gave the jury a curative instruction); (2) by finding that defendant had violated the order *in limine*, even though the trial court had never entered such an order and defendant had never committed a violation (if the order did exist); (3) by failing to recognize that any perceived transgressions by defendant's attorney did not affect the outcome of the case in light of all of the curative measures (hearing and ruling upon plaintiff's objection to the first photograph in a sidebar conference, offering to hold a sidebar conference on plaintiff's initial objection to the second photograph, and giving the jury a curative instruction as requested by plaintiff) that had been taken by the trial court during the trial, which removed any potential for prejudice; and (4) by failing to recognize that the trial record supported both the jury's verdict and the jury's answer to the special interrogatory. For all of the

11

reasons stated, therefore, defendant asks that we vacate and reverse the trial court's grant of plaintiff's motion for new trial and that we reinstate the judgment entered for defendant on the jury verdict.

¶ 24 Plaintiff argues that the trial court's ruling was proper and should be upheld. Plaintiff asserts that the trial court correctly granted plaintiff's motion for new trial because defendant's attorney intentionally violated the motion *in limine* that defendant's attorney had sought and because defendant's attorney deliberately made false representations to the jury that struck at the heart of plaintiff's failure-to-warn case against defendant and deprived plaintiff of a fair trial. Thus, plaintiff maintains that the trial court's ruling on the motion for new trial did not constitute an abuse of discretion. In response to defendant's specific contentions on this issue, plaintiff asserts that: (1) her claim of error as to defendant's attorney's misconduct was not waived because she did not receive the relief she had requested during the trial—either a mistrial (her preferred form of relief, according to plaintiff) or a curative instruction specifically directing the jury to disregard the false suggestion that defendant's attorney had made; (2) the curative instruction that the trial court gave to the jury was inadequate and insufficient and compounded the error because it let the jury think that the warnings suggested by defendant's attorney actually existed and that the jury was not supposed to know about those warnings; (3) the order *in limine* existed, was acknowledged multiple times by defendant's attorney, and was intentionally violated; (4) even if the order *in limine* did not exist, defendant's attorney's conduct of deliberately giving a false impression to the jury about the warnings contained on the Bendix brake boxes was still improper, prejudicial, and deprived plaintiff of a fair trial; (5) the trial court was in the best position to determine the effect that defendant's attorney's misconduct had on the jury and properly found, without speculating, that defendant's attorney's misconduct had

12

prejudiced plaintiff; and (6) the trial record in this case does not support the jury's verdict or its finding on the special interrogatory in the face of defendant's attorney's misconduct and the denial of a fair trial for plaintiff. For all of the reasons set forth, therefore, plaintiff asks that we affirm the trial court's grant of plaintiff's motion for new trial.

¶ 25    A trial court's ruling on a motion for new trial will not be reversed on appeal absent an abuse of discretion. *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 38. The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008). A trial court's decision on a motion for new trial is given great deference on appeal because the trial court had the opportunity to consider the conduct of the trial as a whole and is in a much better position than the reviewing court to consider the effects of any errors that occurred, the fairness of the trial to all of the parties, and whether substantial justice was accomplished. See *Reidelberger v. Highland Body Shop, Inc.*, 83 Ill. 2d 545, 548 (1981); *Boren v. BOC Group, Inc.*, 385 Ill. App. 3d 248, 254 (2008). It was the trial court, after all, that had the first-hand opportunity to observe the appearance of the witnesses, their manner in testifying, and the circumstances aiding in the determination of credibility. See *Maple v. Gustafson*, 151 Ill. 2d 445, 456 (1992). A reviewing court, therefore, should not overturn a trial court's grant of a motion for new trial merely because the reviewing court would have come to a different conclusion on the facts presented. *Boren*, 385 Ill. App. 3d at 254.

¶ 26    In determining whether the trial court committed an abuse of discretion in ruling upon a motion for new trial, the reviewing court will consider whether the jury's verdict was supported

13

by the evidence and whether the losing party was denied a fair trial. *Maple*, 151 Ill. 2d at 455. Plaintiff's main assertion in the instant case is that she was denied a fair trial by the conduct of defendant's attorney. Although it is well settled that a party is entitled to a fair trial and not a perfect one (see *Garest v. Booth*, 2014 IL App (1st) 121845, ¶ 48), the misconduct and improper argument of an attorney may, under certain circumstances, warrant the grant of a motion for new trial (see *Gapinski v. Gujrati*, 2017 IL App (3d) 150502, ¶ 54). For such a grant to be justified, however, the improper conduct of the attorney must have substantially prejudiced the moving party. See *id.* Of more specific relevance to this case, the violation of an order *in limine* will constitute reversible error if the following three requirements have been met: (1) the order was specific; (2) the violation was clear; and (3) the moving party was prejudiced by the violation (the violation deprived the moving party of a fair trial). *Tucker v. Division Sales, Inc.*, 315 Ill. App. 3d 472, 476 (2000); *Larkin v. George*, 2016 IL App (1st) 152209, ¶ 11.

¶ 27 In the present case, after reviewing the record, we find that the trial court properly determined that plaintiff had been deprived of a fair trial by defendant's attorney's conduct relative to the photograph matter and properly granted plaintiff's motion for new trial on that basis. We reach that conclusion for two reasons. First, the record in this case shows that the requirements set forth above were satisfied for the grant of a new trial to be warranted based upon the violation of an order *in limine*. See *Tucker*, 315 Ill. App. 3d at 476; *Larkin*, 2016 IL App (1st) 152209, ¶ 11. The record in this case established that at the final pretrial conference, defendant's attorney sought and obtained an oral agreement from plaintiff's attorney on the pre-disclosure of exhibits. That agreement was clear, specific, and uncomplicated—prior-afternoon notice was required for exhibits that the party intended to use in direct examination and morning-of notice was required for exhibits that the party anticipated using in cross-examination. The

14

parties entered into that agreement on the record in the presence of the trial court, and the agreement essentially became the trial court's order *in limine* as the trial court's written order indicated that defendant's request on pre-disclosure was "PASSED," presumably in recognition or acknowledgment of the parties' agreement.Despite that agreement/order, however, defendant's attorney chose not to pre-disclose the two photographs that he anticipated using in his cross-examination of Brandon LaFever, decedent's son and an important plaintiff witness, because defendant's attorney did not want to give plaintiff's attorney the opportunity to prepare Brandon for possible cross-examination questions about the Bendix brake boxes. At the most basic level, the violation of the agreement/order *in limine* caused the exact prejudice that defendant's attorney had intended—it deprived plaintiff's attorney of the opportunity to prepare Brandon for any possible cross-examination that could arise from the photographs, regardless of whether the photographs were actually admitted into evidence or shown to the jury. In addition to that basic prejudice, however, the trial court noted when ruling upon plaintiff's motion for new trial that defendant's attorney's conduct was deeply troubling and egregious, that it put plaintiff at a huge tactical disadvantage, and that it had the potential to impact the outcome of the trial. That assessment was not based upon speculation, as defendant contends, but upon the trial court's first-hand opportunity to observe the entire trial and to evaluate the error in the context of those proceedings. See *Reidelberger*, 83 Ill. 2d at 548; *Maple*, 151 Ill. 2d at 456; *Boren*, 385 Ill. App. 3d at 254. Therefore, because the record in this case shows that there was a specific order *in limine* on pre-disclosure, that defendant's attorney clearly violated that order with regard to the two photographs, and that plaintiff was prejudiced as a result of that violation, the trial court was well within its discretion to grant plaintiff's motion for new trial. See *Tucker*, 315 Ill. App. 3d at 476; *Larkin*, 2016 IL App (1st) 152209, ¶ 11.

15

¶ 28    In reaching that conclusion, we disagree with defendant's assertion that no such order *in limine* existed in this case. The defendant's attorney who violated the order *in limine* acknowledged the existence of the order during the sidebar conference that was held when the photograph matter was occurring. In addition, although the specific terms of the pre-disclosure rule were not reflected in the trial court's written order, they were contained in the parties' oral agreement on pre-disclosure, and the record shows that both sides were well aware of the existence of that rule. This is not a case where an order *in limine* was violated because the attorney did not know or was uncertain about the specific terms of the order. Compare *Reidelberger*, 83 Ill. 2d at 550-58 (upholding the reversal of the trial court's grant of a motion for new trial where the trial court's orders *in limine* were not clear and the record did not support the trial court's finding that the orders *in limine* were violated). To the contrary, in this case defendant's attorney understood the order *in limine* but deliberately chose not to abide by it.

¶ 29    Our second reason for finding that the trial court's grant of a new trial was proper in this case is because of the additional prejudice that was caused to plaintiff as a result of the questions that defendant's attorney asked Brandon regarding Brandon's knowledge or memory of any asbestos warnings contained on the Bendix brake boxes. When defendant's attorney asked Brandon if he remembered any warnings on the Bendix brake boxes about not using compressed air or blowing off dust, defendant's attorney compounded the error that had already occurred by improperly suggesting to the jury, under the guise of trying to refresh Brandon's recollection, that the exact precautionary warnings that plaintiff claimed were missing in this case were contained on the outside of the Bendix brake boxes, even though defendant's attorney knew that no such warnings existed. The additional prejudice caused by that false suggestion was significant because the jury had heard testimony that the decedent had used Bendix brand

16

replacement brakes and could have improperly been led to believe that the decedent had received the warnings in question, albeit through another product manufacturer. Such skulduggery cannot be condoned. Plaintiff's attorney promptly moved for a mistrial, but the trial court reserved ruling on that motion and gave the jury a curative instruction instead. Contrary to defendant's assertion on appeal, that instruction did not comply with what plaintiff's attorney had requested—to tell the jury that it was to disregard any suggestion that there was a warning label that said anything similar to what defendant's attorney had indicated—and was insufficient because it left open to the jury the possibility that such warnings existed on the Bendix boxes. In hindsight, after having seen the entire jury trial take place and having been able to evaluate the error in the context of those proceedings, the trial court determined that a new trial was warranted. In so doing, as noted above, the trial court indicated in its comments that defendant's attorney's conduct was deeply troubling and egregious, that it put plaintiff at a huge tactical disadvantage, and that it had the potential to affect the outcome of the trial. Based upon the record before us, we cannot conclude that the trial court's ruling on the motion for new trial was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Tucker*, 315 Ill. App. 3d at 476-77 (reversing the trial court's judgment and remanding for a new trial where the plaintiff was prejudiced by questions that the defendants' attorney asked of the plaintiff's expert witness that implied information or arguments to the jury that were in violation of the order *in limine*). We, therefore, find that the trial court did not commit an abuse of discretion in granting plaintiff's motion for new trial.

¶ 30                                                    III. CONCLUSION

¶ 31            For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

¶ 32        Affirmed.